BĪGNALL & KEELER MANUFACTURING COMPANY, Respondent, v. PIERCE, BUTLER & PIERCE MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals, December 4, 1894.

1. **Evidence**: PAROL EVIDENCE IN VARIANCE OF WRITTEN CONTRACT. When a contract is reduced to writing, proof of prior oral negotiations between the parties to it is inadmissible to vary or alter its terms.

2. **Instructions**: REFUSAL OF INSTRUCTION EMBODYING PROPOSITION ALREADY DECLARED. The refusal of an instruction is warranted, when the proposition embodied in it is contained in another instruction given by the court.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Phillips, Stewart, Cunningham & Eliot* for appellant.

*S. N. Taylor* and *Chas. Erd* for respondent.

BOND, J.—The cause of action in controversy in this case is the second count in plaintiff's petition, which alleges, in substance, a written contract between the parties, made on June 1, 1889, whereby the defendant employed the plaintiff to construct "a nipple machine, guaranteed to cut two thousand nipples per day," upon an agreement by defendant to forward its ninety days' acceptance for the price of said nipple machine after its completion and receipt. Said second count further alleges that the machine in question was to be one of new and novel construction, requiring

VOL. 59—43

much skill, experimenting and testing, in order to perfect it in all of its parts and make it perform the guarantee aforesaid; that plaintiff agreed to use reasonable care and diligence in making it; that it was designed for the special use of the defendant, who was advised from time to time of the progress made, and consented by correspondence to the delays caused by the experiments and tests employed for the perfecting of the machine; that it was fully completed on the —— day of July, 1891, and found after final experiments and tests, to meet the guarantees made upon its sale; that on or about the twentieth day of July, 1891, defendant peremptorily refused to accept said machine, or carry out its contract in respect thereto; wherefore, judgment was prayed for $900, as the contract price of said machine. The answer was a general denial.

The contract between the parties was evidenced by the following letters:

Defendant to plaintiff, May 10, 1889.

"We have been thinking over the matter seriously of purchasing two machines, one for twelve-inch pipe and the other for nipples. We have decided to offer you $2,000 for those two machines complete, if guaranteed to give perfect satisfaction. The nipple machine, you agree to cut from one-fourth inch to two inches, inclusive. You also guarantee same to turn out 2,000 nipples per day. If you can ship us this 12-inch pipe machine inside of thirty days, and the nipple machine within two months, you may enter the order for same, with the understanding that you are to accept in payment for these two machines our note at four months, we to send you settlement on receipt of machines, if same proves satisfactory, and you also to guarantee to keep them in perfect repair, excepting the natural wear and tear, for a period of six months."

Plaintiff to defendant, May, 23, 1889.

"We could only say 'no' by telegraph. Our Mr. Bignall made you a proposition when there, and he is now of the opinion that he had not thought sufficiently over the matter. It would be utterly impossible to get out the nipple machine in the time mentioned in your letter. His proposition was to ship the 12-inch machine within thirty days, and four or five months for the other. We are willing to place the order for the 12-inch machine for $1,300; the nipple machine to be a question for future consideration. We have two plans for building it, and are not certain as yet which will be preferable."

Defendant to plaintiff, May 27, 1889.

"We are in receipt of your letter of May 23, and after careful consideration, we have concluded to make you two propositions. You state you can ship the 12-inch machine in thirty days. This will be satisfactory, we not being so particular about the time specified for the nipple machine.

"Now, we will either offer you $2,200, the original proposition for the 12-inch machine and a nipple machine to cut from one-fourth inches upwards; or, we will offer you $2,000 for the 12-inch machine and the nipple machine to cut from one-half inches upwards, with a guarantee, etc., as per our original letter.

"Please state which proposition you prefer to accept."

Plaintiff to defendant, May 29, 1889.

"We will take the first and original proposition, viz, $2,200 for both machines, as follows:

"The twelve-inch machine to be shipped as soon as possible, or thirty days from date.

"The nipple machine to cut from one-fourth inch to two inches, to be got out and shipped as soon as

possible. We want to try it most thoroughly before shipping. We think we can get the No. 12 out in time, and will make our best endeavors to do so, but may be a week behind.

"Terms: Ninety days' acceptance upon receipt of No. 12 to cover price of same, and ninety days' acceptance upon receipt of nipple machine to cover balance."

The reference in said letters to machine number 12 may be disregarded, the transaction in that regard being settled.

Following the making of the above contract the parties engaged in a protracted correspondence, which tended to show the great urgency on part of the defendant for the completion of the machine, and many excuses by plaintiff for the delay in its construction, based chiefly on the difficulties of making a machine "of entirely new design." After this correspondence had lasted over two years, defendant on July 16, 1891, canceled its order for the machine, on the alleged ground of unreasonable delay in its completion. Plaintiff refused to accept such cancellation, and wrote on July 21, 1891, that the machine was complete and ready for a test of its capacity. Defendant replied that it had countermanded the order for the machine, and could not accept the same. Upon the receipt of another letter from plaintiff defendant replied, making a new proposal to take the machine upon new terms and further guarantees. This was rejected by plaintiff, and thereupon on September 9, 1891, defendant reiterated its refusal to accept the machine, and the correspondence between the parties closed, and the present suit was brought.

On the trial parol evidence was adduced tending to show that plaintiff caused work to be done on the machine for about two years; that, upon a test of the

machine in 1891, it appeared to work properly; that, when it was again tested in the summer of 1893, after a continuance of the present case for that purpose, it cut at the rate of two thousand, four hundred nipples per day.

There was also evidence tending to show that a machine of the general character of the one in suit, if plans had been framed, and no difficult experimenting was required, could be built in six months; and on the other hand, if such a machine "existed only in conception," and without any plans prepared therefor, two years would not be an unreasonable time for its construction.

Defendant offered in evidence the deposition of two of its officers, the vice president and secretary, to show the circumstances and statements, under which the order for the machine was given, and the conversation then had between deponents and one Bignall, the contracting agent of the plaintiff. Upon objection to these depositions, on the ground that said Bignall was dead when they were taken, the court, over defendant's objection, excluded such portions as purported to give the conversation of said Bignall. Thereupon the court sitting as a jury, after giving and refusing certain instructions, found for plaintiff in the sum of $1,035.25. From a judgment on this finding the present appeal was taken.

The first point urged for reversal is the ruling of the trial court in excluding the two depositions offered by defendant, "in so far as they undertake to detail conversations had with Mr. Bignall." It is sufficient to say in answer to the exception by appellant to this ruling, that the conversation between the president of the plaintiff corporation and representatives of the defendant corporation related to the terms and provisions of a contemplated contract between the parties to

this suit, and, since that contract was subsequently reduced to writing, all prior negotiations are presumed to have been included in the written contract and are inadmissible to vary or alter its terms. *Morgan v. Porter*, 103 Mo. 135. As this ground of objection to the conversations in question is sufficient to sustain the ruling of the trial judge, it is not necessary to discuss any other or different reason which he may have given for his action at the time.

The second error assigned by appellant is the refusal of the court to give its instructions numbers 5 and 6. The court gave, at appellant's request, four instructions. In the first and second the written contract was construed and the obligations thereunder defined, after which the court declared it to be the law that, "if respondents did not use diligence and all practicable speed, under the circumstances attending the transaction, in constructing the machine," appellant was entitled to cancel its order of purchase. The third and fourth instructions given at appellant's request are, to wit:

3. "The court instructs the jury that the plaintiff must be assumed to have contracted that its officers and employees had the skill and knowledge requisite for the manufacture or construction of the machine, which it agreed to sell and deliver to the defendant; and, in determining what is reasonable time for the construction of such a machine, the jury should regard only such time as might properly be consumed in the construction of the machine by persons having such knowledge and skill, and the machinery and materials which might be needed for that purpose, or facilities for obtaining the same."

4. "The court instructs the jury that, if it is satisfied from the evidence that on July 16, 1891, the time when defendant cancelled its order for the machine, the

plaintiff had under all the circumstances of the case already had a reasonable time to complete and ship the machine, taking into consideration whatever delay the defendant may have consented to or waived, the verdict must be for the defendant."

After these declarations of law the court refused the following instructions requested by appellant:

5. "The jury are instructed that, if in their judgment letters of inquiry or complaint sent to plaintiff by defendant show a willingness or consent to receive the machine after the time of delivery originally understood, such letters respectively must not be taken to give the plaintiff an indefinite time thereafter within which to complete the contract, but the defendant was after each such letter entitled to cancel the order and annull the contract, if the plaintiff did not finish the machine and deliver it within a reasonable time thereafter. And in determining what is a reasonable time after any such letter within which plaintiff ought to have finished the work, the jury can properly consider the time already consumed by plaintiff in its undertaking."

6. "The court instructs the jury that the defendant did not contract or agree to wait for the machine long enough to permit experimenting with respect to its construction, meaning thereby trials of plans which proved defective, or, to await tests of the machine other than for the purpose of determining the strength and mechanical adjustment of its parts according to a design which should have been substantially perfect prior to the construction of the machine, unless the errors of construction should be trifling or susceptible of correction at once upon observation; and that for delays which might have been caused by want of knowledge on the part of the plaintiff as to how to

construct a machine of the character agreed upon, the defendant is not responsible."

The refusal of the two foregoing instructions was not error. The first one of the refused instructions simply announced the proposition that letters written by defendant to plaintiff, waiving or consenting to delays in the construction of the machine, would not warrant an inference of waiver, or consent to unreasonable delay thereafter. In instruction number 3, *supra*, given at appellant's request, the court specifically defined reasonable time; and by instruction number 4, *supra*, given at the same instance, the court declared the law to be, that plaintiff was only entitled to a reasonable time to complete and ship the machine, taking into consideration whatever delay the defendant may have consented to or waived. This was an explicit statement on the part of the court, that the duty of constructing the machine in a reasonable time rested upon plaintiff, irrespective of the receipt by it of letters from defendant waiving or consenting to prior delay. The court could not consistently with this instruction have found that the reception of such letters by plaintiff would entitle it to delay *unreasonably* its future work in constructing the machine.

As, therefore, the refused instruction affirmed the right of plaintiff to finish the machine and deliver it within a reasonable time after the reception of such letters of waiver or consent of prior delay, and as *this* proposition was clearly embraced in the declaration of law made by the court in instruction number 4 given at appellant's request, the court obviously was warranted in refusing an instruction which contained a mere affirmance of a proposition embraced in one already given.

The court was clearly right also in refusing to give instruction number 6, *supra*, requested by appellant.

In the first place the instruction in question assumed a fact which was wholly unsupported by the evidence and beyond the obligations imposed in the contract between the parties. The instruction in question was framed upon the assumption, that plaintiff must construct the machine "according to a design which should have been substantially perfect prior to the construction of the machine."

The contract between the parties did not obligate respondent to produce a machine of a specified pattern or design; it merely required the making of a machine in a reasonable time of a given capacity. If respondent, by invention or experiment, was able to produce a machine of the required capacity in the agreed time, it could claim a full performance of its contract. It was, therefore, clearly erroneous to assume, as in the instruction under consideration, that it was necessary to a performance of the contract in question that the machine should have been constructed according to a design or model; and the court, for this defect, rightfully refused said instruction. Respondent did contract that it had the skill and instrumentalities for the manufacture of the machine in a reasonable time, which it agreed to sell and deliver to defendant. Its contract went no further. Its obligations in this respect were clearly and fully stated in instruction number 3, *supra*, given by the court at appellant's request, and covered all that appellant was entitled to on this issue.

It is also insisted by appellant that, although upon repudiation of a contract before the time of performance, the other party may treat the contract as broken and sue at once for its breach, yet if he does not avail himself of this right but waits until the time of performance, he thus keeps the contract alive for both parties, and can only sue after a subsequent breach.

That this general principle is well supported by the authorities may be conceded. *Roebling's Sons' Company v. Lock Stitch Fence Company*, 130 Ill. 660; *Remy v. Olds*, 88 Cal. 537; *The Oskaloosa College v. Hickok*, 46 Iowa, 237. It can not, however, avail appellant under the facts in this case, since the evidence shows that just prior to the institution of the suit appellant reiterated its renunciation of the contract in the clearest terms. Respondent was, therefore, entitled thereafter to sue at once. It follows that the present action was not prematurely brought. Finding no reversible error in the record, the judgment of the trial court herein will be affirmed. All concur.