CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY v. ALVA TODD.

FILED OCTOBER 19, 1905. No. 13,943.

1. Market reports in journals, such as the commercial world relies upon, are competent evidence of the state of the market.

2. Carriers: DELAY IN TRANSPORTING FREIGHT: DAMAGES. Where a railroad company negligently refuses to receive and transport freight intended for immediate sale upon the market, such as live stock, it is liable for the expense of keeping the stock, caused by such delay, and for the difference between the price of the stock when it should have arrived at the market and the price when it did actually arrive.

3. **Damages:** EVIDENCE. The class and condition of live stock are material matters in determining their market price, and, in the absence of evidence as to these matters and of what the market price of live stock of the class in question was, damages cannot be awarded from a claimed decline in the market price of stock of the general description of that which the carrier negligently refused to accept and transport.

ERROR to the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*H. M. Sinclair, J. W. Deweese* and *F. E. Bishop,* for plaintiff in error.

*Warrington & Stewart, contra.*

DUFFIE, C.

February 25, 1903, Alva Todd, the defendant in error, hereafter called the plaintiff, applied to the agent of the railway company for two cars in which to transport sheep and hogs from Farnam, Nebraska, to South Omaha, the cars to be furnished and stock to be shipped on February 28, 1903. The railway company placed the cars on the side track at Farnam on February 27, but on account of a storm the plaintiff did not drive his stock to the station until Saturday afternoon, the 28th, and too late to be shipped that day, there being but one freight train, which usually left the station for the east about 7:15 A. M. At the time of ordering the cars the agent informed the plaintiff that his sheep could not be shipped until they were inspected by a government inspector, on account of an order in force prohibiting the railway company from transporting sheep without a certificate from the inspector that they were free from disease. The agent, at Todd's request, wired to Grand Island for an inspector, but failed to secure one. The order requiring inspection was issued February 9, 1903, but on the 26th of February, 1903, the following modification of the order was made, of which the agent had no notice: "On account of requests of representatives of the South Omaha packing industry, and with

the consent of Governor Mickey, I wish to modify the quarantine notice on sheep, viz., permitting all fat sheep to be marketed up to July 1, 1903, without certificates of inspection. After July 1 you will please comply with the notice issued to you from this office February 9, 1903. Respectfully, W. A. Thomas."

It does not clearly appear from the record whether the plaintiff requested the agent to ship his sheep on Sunday. Monday there was no train, and on Monday evening plaintiff noticed in a newspaper that the quarantine order had been modified, and called this to the attention of the agent of the railway company. Thereupon the agent telegraphed to the general freight agent of the company, and about 11 o'clock Tuesday morning received a dispatch directing him to receive the sheep without inspection. The sheep were loaded Wednesday morning about nine o'clock, the train being late, and arrived in South Omaha at 9:30 o'clock Thursday morning, March 5, and were delivered by the railway company to the Union Stock-Yards Company at 10:45 that same morning, and by that company were sent to the chutes for unloading at 11:10 A. M. The time of the arrival of the stock at South Omaha appears from a stipulation of the parties filed in the case. It further appears from the evidence of W. A. Thomas, state veterinarian, that the quarantine order issued by the state authorities on February 9 was modified, as appears from the order above quoted, on the afternoon of February 26; that notice of such modification was mailed to the railway authorities of the state on the evening of that day, but too late to be carried in the mails before the morning of February 27. The plaintiff in his petition alleges that the company refused to receive his stock until March 4, to his damage in care and expense for feeding same and loss from decline in the market price, and also that there was delay in moving the train, and that his stock was confined in defendant's care without feed and water for an unusual length of time, and as a consequence thereof the said sheep shrank in weight and became rough and gaunt, and

their market value on that account was depreciated in the sum of $58.20.

The court properly instructed the jury that the railway company was bound to observe and enforce a rule or regulation issued by the proper state authorities requiring an inspection of sheep before receiving the same for shipment, until such time as it had received proper notice and authority from the government officials, acting under such inspection law, of its suspension, and until it had reasonable time to notify its agents that such rule or regulation was no longer in force. And, further, that the jury must be satisfied from the evidence that the defendant did not transport the stock in question within a reasonable time, and because of such fact the plaintiff had sustained damages. There is an entire absence in the instructions of advice to the jury of what they should consider in determining whether the company failed to receive and ship the stock within a reasonable time after the order of February 26 was issued, but as there was no request for a charge by the company on this question it amounts to a failure to instruct upon that particular question, and not a misdirection, and consequently not reversible error. The verdict was for $140 in favor of the plaintiff, and, as the expense claimed by the plaintiff for keeping his stock at Farnam from February 28 until March 4 was but $22.60, it is evident that this verdict includes an amount either for the alleged damage to the stock on account of being confined in the cars for an unusual length of time or on account of a decline in the market price of such stock between March 2 and March 6, when they were sold. This requires us to determine whether, under the evidence, the railway company was negligent in not receiving and shipping the stock at an earlier date than it did. The order of the state authorities allowing railway companies to receive and ship fat sheep without an inspection was mailed at Lincoln, Nebraska, on the evening of February 26, and the presumption obtains that it would reach the general offices of the company at Omaha by due course of

mail, which would be on the 27th. There is no evidence showing that the railway company is the owner of any telegraph line, and all that could be expected of it in the use of reasonable diligence would be to notify their agents of this order by due course of mail, and this, we think, in the absence of evidence to the contrary, could have been done as early as March 1 or 2, which would have allowed shipment to be made not later than March 3. There was an unexplained delay in the shipment of from one to two days, and the expense of keeping the stock at Farnam for that time was a proper element of damages.

The plaintiff introduced in evidence copies of the Daily Drovers Journal-Stockman of March 2, 5 and 6, 1903, showing the state of the market and the sales of sheep at the stock-yards in South Omaha on these dates. Objection was made to this evidence upon the ground that it was incompetent, irrelevant and immaterial. We do not think the objection well taken. In *Sisson v. Cleveland & T. R. Co.*, 14 Mich. 489, it is said: Market reports in newspapers, such as the commercial world relies upon, are competent as evidence of state of markets. "Such reports, which are based upon a general survey of the whole market, and are constantly received and acted upon by dealers, are far more satisfactory and reliable than individual entries, or individual sales or inquiries."

So, too, do we think that the plaintiff is entitled to recover on account of the depreciation in the market price of his stock between the date when it should have been delivered and the date of its delivery. In *Peet v. Chicago & N. W. R. Co.*, 20 Wis. 624, it is said: "The rule of damages as given to the jury by the circuit court was, that the plaintiff was entitled to recover the difference between the price of the flour when it should have arrived in New York, and the price at the time when it did actually arrive, if it was sold at the latter depreciated price. * * * We think, on principle as well as authority, the ruling of the circuit court as to the measure of damages was right."

While this is the proper rule of damages, we are yet of

the opinion that there is no proper evidence in the record before us to show that the defendant sustained any damage on account of a depreciation in the market price of his sheep. It is true that the Daily Drovers Journal-Stockman introduced in evidence shows that sheep were sold on March 5 at a higher price than that received by the plaintiff, but whether they were the same character of sheep as those reported sold nowhere appears, and it is evident that the character and class of the sheep offered on the market is a material factor in determining the price at which they will sell. Neither do we think that the plaintiff was entitled to any damage on account of his sheep being confined in the company's cars for an unusual length of time. All the evidence is to the effect that the schedule time of the train upon which the sheep were transported is about 24 hours, and the train carrying the sheep left Farnam at 10:45 A. M. and arrived in South Omaha at 9:30 the next morning, making the run in less than schedule time. There was some delay in the train arriving at Farnam on account of what the agent calls having to "double in," that is, the engine had to haul in part of the train and then go back for the remainder, but the plaintiff's stock was confined in the car for less time than if the train had arrived promptly and ran through on schedule time.

For the reason that the record is barren of evidence to support the amount of damages allowed, we recommend a reversal of the judgment and that the cause be remanded.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment is reversed and the cause remanded.

REVERSED.