JOHN T. FAHEY ET AL., APPELLANTS, v. UPDIKE ELEVATOR COMPANY, APPELLEE.

FILED MARCH 1, 1918. No. 19641.

1. **Sales:** EXECUTORY CONTRACT: CANCELATION: MEASURE OF DAMAGES. A buyer of grain to be shipped in the future may refuse to recognize the seller's cancelation of the unperformed contract of sale, may wait until the agreed shipping period has expired, and may then purchase on the open market the number of bushels which the seller agreed to, but did not, ship; and the measure of damages in such a case is the difference between the contract price and the market price paid at the stipulated time and place of delivery.

2. **Evidence:** MARKET PRICE. Where prices of grain on the open market with specific dates are properly shown by authentic publications or trade bulletins accepted by grain dealers generally as standards, testimony of a grain dealer as to individual transactions or bargains on the board of trade is not admissible on the issue of market prices.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed.*

*Montgomery, Hall & Young* and *R. E. L. Marshall,* for appellants.

*Edward P. Smith* and *William A. Schall,* contra.

ROSE, J.

Plaintiffs are grain dealers in Baltimore, Maryland. Defendant is a grain dealer and operates an elevator in Omaha, Nebraska. This is an action to recover damages aggregating $37,662.05 for failure of defendant to ship wheat to Baltimore according to the terms

of four written contracts. The petition contains four counts. In the first, plaintiffs allege that defendant sold them 100,000 bushels of wheat June 24, 1914, shipment to be made to them at Baltimore in August, 1914; that defendant delivered 96,466.80 bushels and refused to deliver the remainder of 3,533.20 bushels; and that the difference between the contract price, 86½ cents a bushel, and the market price on the last day of the shipping period, $1.18½, was 32 cents a bushel, resulting in a loss of $1,130.62, with interest from August 31, 1914. In the second count plaintiffs pleaded a similar contract July 6, 1914, for 100,000 bushels of wheat at 87¼ cents a bushel, shipment to be made at defendant's option in either the last half of August or in September, 1914; failure to ship any wheat; market price on the last day of the shipping period, $1.11½ a bushel; loss of 24¼ cents a bushel, or $24,250, with interest from September 30, 1914. The third count is based on a similar contract July 8, 1914, for 100,000 bushels of wheat at 87⅛ cents a bushel, shipment to be made in August, 1914; delivery of 87,350 bushels; failure to deliver 12,650 bushels; market price on last day of shipping period $1.18½; loss of 31⅜ cents a bushel, or $3,968.93, with interest from August 31, 1914. The fourth count is based on a contract July 11, 1914, for 25,000 bushels of wheat at 85¼ cents a bushel, shipment to be made in August, 1914; failure to ship any part of it; market price on last day of shipping period $1.18½ a bushel; loss of 33¼ cents a bushel, or $8,312.50, with interest from August 31, 1914. Defendant admitted the contracts of June 24 and July 8, and, among other things, alleged that it was willing to ship all of the wheat in the month of August, and elected to do so, but that plaintiffs had no facilities for receiving shipments at Baltimore, and that the carriers consequently refused to furnish cars; that defendant notified plaintiffs of the cancelation of the contracts after they failed to procure cars, and

that it was then their duty to buy wheat on the open market, which could have been bought for 92 9/10 cents a bushel, including freight charges to Baltimore. Upon a trial of the issues the court directed the jury to find in favor of plaintiffs and instructed that the measure of recovery was the difference between the contract prices and the market prices within a reasonable time after defendant had notified plaintiffs that it would not comply with the contracts. From a judgment on the verdict in favor of plaintiffs for $14,014.61 only, they have appealed.

The first assignment of error relates to the measure of damages. Defendant did not appeal from the judgment against it for $14,014.61. It follows that the sale of wheat, the defendant's breach of contract and the liability for resulting damages are established by the record. The contracts pleaded in the petition were made by the parties. Plaintiffs bought the wheat for export from Baltimore. An embargo on shipments for that purpose, effective from August 4, 1914, to August 19, 1914, prevented defendant in the meantime from getting cars. For this condition plaintiffs were in no-wise responsible. Defendant wired them August 15, 1914, that it would cancel the purchase of the unshipped wheat under the contracts of June 24, 1914, July 8, 1914, and July 11, 1914. Cancelation of the contract of July 6, 1914, was wired to plaintiffs August 17, 1914. Plaintiffs did not consent to the cancelations, but waited until the shipping periods had expired and bought wheat on the open market to take the place of what defendant had agreed to, but did not, ship. The embargo prevented shipments during a part only of the shipping periods. It did not interfere with shipments after August 19, 1914. Defendant had until August 31, 1914, to complete the shipments under the contracts pleaded in the first, third and fourth counts, and until September 30, 1914, under the contract pleaded in the second count.

Plaintiffs take the position that the measure of damages is the difference between the contract prices and the market prices of the unshipped wheat at the stipulated times and place of delivery. Instead of adopting this view of the law, the trial court instructed the jury, as already stated, that the measure of recovery is the difference between the contract prices and the market prices within a reasonable time after defendant had notified plaintiffs, August 15, 1914, and August 17, 1914, that it would not comply with the contracts. Measured by this rule the jury allowed plaintiffs a part only of their claim.

When prices rise after sale and before delivery, the seller is exposed to a temptation to evade the purchase, if cancelation can be accomplished without a full measure of responsibility for resulting damages. The buyer is exposed to a similar temptation when prices begin to fall. Regardless of self-interest, honesty and fair-dealing require each party to respect his obligations. A seller of undelivered grain cannot arbitrarily shorten the stipulated period for delivery, and thus take the fruits of the buyer's bargain, without incurring liability for resulting damages. The rule generally applied was stated by this court as follows:

"The measure of damages for a breach of a contract by the vendor of personal property failing to make delivery to the vendee, generally, is the difference between the contract price and the fair market value of the property at the time and place specified in the agreement for delivery." *Graham v. Frazier*, 49 Neb. 90.

Plaintiffs had a right to make continuous demands for shipments of undelivered grain as long as the stipulated shipping periods lasted, though defendant gave notice of nonperformance. After plaintiffs refused to recognize the cancelations, defendant was free to ship the grain sold, and in that event to collect the contract prices. Under the circumstances, a cause

of action in favor of plaintiffs for damages did not accrue until the time fixed for performance had elapsed. While defendant, by incurring liability for damages, could refuse performance at any time, it could not, by a mere breach of contract, fix the date of accountability to suit its own interests. *Carstens v. McDonald*, 38 Neb. 858. The same result could not be accomplished by a mere tender of performance during a temporary suspension of shipping facilities, not attributable to either party; such facilities being restored in time for performance within the stipulated shipping periods.

There was therefore error in the instruction that the measure of recovery in the present case was the difference between the contract prices and the market prices within a reasonable time after defendant notified plaintiffs that it would not comply with the contracts.

A ruling which permitted a grain dealer to testify that he could buy "option wheat" below the market price for "cash wheat" is challenged as erroneous. This assignment is sustained. The prices of wheat on the open market at the expiration of the shipping periods were material inquiries. On that issue plaintiffs introduced the "Daily Bulletin," a publication accepted by the trade or by grain dealers generally as a standard or as an authentic record on the subject. In making their contracts for future deliveries the parties contemplated the usual and recognized sources of knowledge for determining prices on the open market. Proof of individual transactions or bargains by a dealer should have been excluded. *Chicago, B. & Q. R. Co. v. Todd*, 74 Neb. 712; *Sisson v. Cleveland & T. R. Co.*, 14 Mich. 489.

For the errors pointed out, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

SEDGWICK, J., not sitting.