MINNEAPOLIS-MOLINE POWER IMPLEMENT CO., APPELLANT, v. JOHN R. WRIGHT, RESPONDENT.

Kansas City Court of Appeals. November 7, 1938.

*W. T. Bellamy* and *Watson, Ess, Groner, Barnett & Whittaker* for appellant.

. *Louis Buck, Perry G. Storts* and *Johnson & Bacon* for respondent.

BLAND, J.—This is an action in replevin to recover the possession of a combine sold by plaintiff to the defendant under a written contract dated May 6, 1935.

The defendant filed an answer and a counterclaim. In the counterclaim defendant sought to recover damages for the alleged breach of the contract. The sufficiency of the pleadings is not questioned by either party. The contract recites the purchase price was $155 cash, plus freight, and three notes executed by defendant in the total amount of $1064.

Trial to a jury resulted in a verdict for the plaintiff for the recovery of the possession of the combine and for the defendant on his counterclaim in the sum of $800. From the judgment rendered on the verdict the plaintiff has appealed.

The pertinent provisions of the warranty in the contract of sale follows:

"That all of said machinery is well made and of good material, and when properly assembled, adjusted and operated will perform the work for which intended. . . .

"The company further warrants and guarantees that each machine or implement shall be in good working order when delivered, except for such setting up and adjustment as is ordinarily necessary after shipment, and that, when properly set up and when operated in accordance with the printed instructions furnished by the Company, it will fulfill the terms of this warranty. . . .

"If within three days after its first use, the machinery or implement, with proper care and under favorable conditions, shall fail to fulfill the warranty, the Purchaser shall immediately give notice, by registered mail to the Dealer and to the Company Division

Office through which the goods were ordered stating wherein the machine or implement has failed, and shall allow a reasonable time for a competent man to be sent to put it in good order, and shall render necessary and friendly assistance to operate it. If the machine or implement cannot be made to fulfill the warranty, the Dealer upon written instructions from the Company's Division Office will either furnish another machine or implement with the same warranty or, at the option of the Company, all cash and notes paid on the purchase price shall be refunded to the Purchaser, upon his returning to the Company the rejected machine or implement, F. O. B. cars Dealer's station and either of which acts shall constitute a settlement in full of the transaction, and operate as a release of all claims of both Purchaser and Dealer against the Company arising out of this contract." . . .

Prior to the purchase the defendant told the plaintiff that he wanted the machine to combine his own crops and the crops of seven other farmers.

The machine was made ready for operation by plaintiff's local dealer about noon on June 27th, and operation thereof was begun about the middle of the afternoon of that day. Soon thereafter a flange on a bushing, which controlled the raising and lowering of the header, broke. The plaintiff's dealer supplied a new part and he and the defendant put the combine in operation on the morning of the next day. During the forenoon of that day the safety clutch slipped and the auger wrapping made trouble and "practically nothing" was accomplished, and "right after dinner the safety clutch on the main header drive and the hub of the sprocket on that drive broke." The plaintiff furnished new parts for the broken parts and defendant, on the afternoon of June 29, attempted to operate the machine. At that time Mr. Rosentreter, plaintiff's salesman, was present and operated the machine. After "going a short distance" the safety clutch, which had been replaced about noon of that day, broke "in many pieces." Whereupon defendant said to Rosentreter that "he would have to accept the machine and return my money and notes so I could purchase a machine that would operate more satisfactorily. It had been in the field three days and had operated only a few hours." In reply Rosentreter said, "we will not accept the machine, we will make it do the work for you." On the next day defendant went to plaintiff's office in Kansas City and talked with H. K. Nelson, plaintiff's assistant division manager, told him of the conversation with Rosentreter and said, "I wished they would accept the machine back and give me my money and notes back so that I could secure another machine that would operate satisfactorily." Nelson "refused to accept the machine, said they would make it do the work and he would furnish new parts."

418

Defendant continued his efforts to operate the combine until about August 22, but never "operated as much as a half day without breaking or causing quite a bit of trouble."

There was evidence that plaintiff, at the time the machine was delivered to defendant, or shortly thereafter, knew the combine was "built light," would not do and could not be made to do the work for which it was intended.

In the cross-examination of defendant it was shown that in his deposition he testified he never brought the machine "in here" and offered to return it to Mr. Phillips, plaintiff's local dealer; that he never offered to return the machine to the "Minneapolis-Moline Implement Company;" that he was not, at the time the deposition was taken, willing to return the combine to plaintiff unless his damages were paid.

Defendant at the trial explained said answers by stating in effect that he thought the time referred to "was after the harvest was over;" that he thought the questions in which Phillips and plaintiff, by its full corporate name, were mentioned did not refer to Nelson and Rosenstreter.

The substance of plaintiff's evidence was that defendant never offered to return the combine; that when request for payment of a matured note was made the defendant refused to pay the note and claimed damages for his loss; that in September and thereafter the plaintiff offered to return to the defendant the notes and cash payment upon the latter "returning it (combine) to us and without payment of any damages" and "let that be the full and complete settlement of the transaction." Nelson, for the plaintiff, testified that he knew defendant was having trouble with the combine. When asked why he had not tendered to the defendant the notes and cash paid for the combine before the close of the harvest season, said, "well, I don't know why I didn't make the offer."

The plaintiff does not claim it furnished or offered to furnish another combine to the defendant. Nor does the plaintiff claim that the failure of the combine to do the work for which it was intended was due to any neglect of the defendant.

The plaintiff contends that when defendant refused to pay for the combine, it, upon tender of the purchase price, became entitled to the possession of the combine. Whether the plaintiff was or was not entitled to the possession of the combine is at this time of no moment for the reason the judgment gave the possession of the combine to plaintiff and the defendant has not assailed the judgment.

The main question for determination is whether or not the court erred in refusing plaintiff's requested instruction in the nature of a demurrer to the evidence offered on the counterclaim.

In presenting that question plaintiff says that the contract "fixed

and prescribed the rights and remedies of the parties, and it furnishes the sole basis of respondent's rights, both as to the breach of warranty and the measure of the recovery therefor;" that it did not waive any of the conditions of the contract relating to the duty of the defendant to return the combine to the dealer's station; and that even if there were a waiver with respect to return of the combine, still plaintiff was not entitled to recover consequential damages because such damages were excluded by the terms of the contract and were not within the contemplation of the contract.

The contract was a valid one. *Its terms* fixed the rights of the parties, and prescribed the measure of damages for a breach thereof. [Bank of Polk v. Wood, 173 S. W. 1093, 189 Mo. App. 62; Nichols v. Rhoadaman, 87 S. W. 62, 112 Mo. App. 299.]

The rule announced in the cases just cited precludes recovery on the counterclaim unless the plaintiff waived or breached the provisions of the contract on which it now relies. The plaintiff does not claim the provisions requiring notice by registered mail of the failure of the combine to fulfill the warranty was not waived. Following repeated failures of the combine to operate satisfactorily the defendant offered to return it in exchange for the purchase price. The defendant did not say he would deliver the combine at the dealer's station nor did he say that he would not deliver it there. In fact no word was spoken concerning the place of delivery. When the offers to return the combine were made, plaintiff, speaking through its agents, Nelson and Rosentreter, whose authority to speak and act for it is not questioned, refused such offer, not because defendant failed to say he would deliver the combine at the place stipulated in the contract, but upon the sole ground that they would make "it do the work." Thus plaintiff's authorized agents directed defendant not to deliver the combine at dealer's station or elsewhere but to keep it in the field and at the place of work. Such directions waived the right plaintiff had to require delivery according to the letter of the contract. [Palmer v. Reeves and Company, 139 Mo. App. 473, 122 S. W. 1119.]

The contract says that if the combine "cannot be made to fulfill the warranty" the defendant could return it to plaintiff and receive the purchase price or plaintiff could at the option furnish another machine. The contract is silent concerning the time allowed plaintiff in which to ascertain whether the combine could or could not be made to fulfill the warranty. Therefore, plaintiff had a reasonable time in which to ascertain the facts in that regard. The plaintiff knew the combine was "built light" and of defective material; that some part of it broke every time effort was made to operate it. From the beginning plaintiff knew the combine was not fulfilling the warranty. With this knowledge it refused to accept return of the

combine, retained the purchase price, did not offer to furnish another combine and continued throughout the harvest season to assure defendant that it would make the combine do the work. These assurances were given when plaintiff knew, or at least the jury could find it knew, that the combine could not be made to "perform the work for which intended." It is plain that plaintiff adopted a course of conduct not justified by any provision in the contract. Such a course was therefore a breach of the contract and, for that reason, plaintiff, in its defense to the counterclaim, could not have the benefit of the provisions of the contract relating to the measure of damages. [Motor Part. Inc., et al. v. Freeman, 62 S. W. (2d) 479.]

Plaintiff cites cases in each of which a counterclaim, the same in legal effect as the contract here involved, was enforced as written on behalf of the seller. Those cases involving situations where the seller violated the terms of the contract, that is, where the seller breached the contract wherein a remedy for a breach of the warranty was provided, are not in harmony with Mayfield v. Richardson Machine Co., 208 Mo. App. 206, 214, a decision by this court, holding in effect, that the seller may not have the benefit of the enforcement of a contract insofar as it provides for a remedy for a breach of the warranty, the terms of which it violated. The defendant having performed every provision of the contract, the performance of which was not waived, was entitled to have the question of consequential damage submitted to the jury. [Mayfield v. Richardson Machine Co., *supra*; Minnesota Threshing Machine Co. v. Bradford, 206 Mo. App. 609, 227 S. W. 628.]

In support of its contention that plaintiff may rely upon the portion of the contract providing the remedy to the buyer in case of a breach of the warranty by the seller, which there was evidence tending to show that it violated, it cites authorities which it claims support its view that because defendant, in his counterclaim, sued upon the contract he kept alive the provision of the contract providing, in effect, that a violation of it by the plaintiff should afford defendant no remedy except, in effect, a rescission. These authorities do not hold that a party may defend under a provision of a contract he has breached merely because the performing party sues upon it. In the cases cited it is held:

"The law is that, where the promisor before the time of performance expressly renounces his contract, the promisee is thereby entitled either to treat the contract as broken and sue at once for its breach without averring an offer or readiness to perform, or he may wait until the time of performance has expired, and then sue for the consequences of nonperformance. In the latter case the contract would be kept alive for the benefit of both parties." [Mfg. Co. v. McCord, 65 Mo. App. 507, 508. See, also, Bignall & Keeler v. Mfg.

Co., 59 Mo. App. 673, 681.] The rule stated in these cases is amplified in Volume 2 of the Supplement of Page on Contracts, sec. 2896, reading as follows:

"If the party who is not in default elects to treat the contract as still in force in spite of this renunciation by the adversary party, he may do so as long as such conduct on his part does not aggravate damages; but if he does so, he keeps the contract in force for the benefit of both of the parties thereto, and not merely for his own benefit. Accordingly, the party who renounced such contract may take advantage of any subsequent facts which would have operated as a discharge if he had not renounced liability thereunder. If by its terms a contract is to end upon the happening of a certain event, the party who has renounced the contract before such event has happened may take advantage of the happening of such event if the adversary party elects to treat the contract as in effect. If the party who is not in default elects to treat the contract as in force, and such contract becomes impossible of performance after such renunciation but before the time fixed for performance, as by reason of the outbreak of war which makes performance impossible, such facts operate as a discharge."

It is quite apparent that these authorities have to do with situations entirely unlike the one in the case at bar. Here nothing intervened of material moment between the time of plaintiff's breach of the contract and the expiration of time of the performance thereof. In fact the breach and the expiration of the time of performance occurred approximately at the same time.

There is nothing inconsistent between our holding herein and the well established rule that a person cannot accept and reject the same instrument or, having availed himself of it as to part, defeat its provisions in any other part. [See Squier v. Evans, 127 Mo. 502, 512.] This case is peculiar in its facts. There was evidence tending to show that plaintiff not only breached the contract in respect to the warranty of the machine but, as before stated, violated the provision of the contract providing the remedy in case of a breach of the warranty. The inapplicability of the rule laid down in the case last cited to the facts in the case at bar is made plain in Mayfield v. Richardson Machine Co., *supra*.

The plaintiff argues that the answers made by the defendant when his deposition was taken contradicted his evidence in the trial and, therefore, "the jury ought not pass upon his credibility."

As stated above, the defendant explained the answers in his deposition. Even though the answers were not explained the jury could find defendant told the truth at the trial. [Belzer v. Sears, Roebuck & Co., 76 S. W. (2d) 701.]

The plaintiff argues the verdict is inconsistent and contradictory.

The court submitted to the jury several instructions on the form of the verdict. On behalf of the defendant the court submitted a form whereby the jury might find that defendant was entitled to the possession of the harvester and that the value of the same was ——— dollars and, further that they might find for defendant on his counterclaim and assess his damages at ——— dollars. Also that they might find for defendant on plaintiff's cause of action and for plaintiff on the counterclaim. Also that they might find for plaintiff on its cause of action and on the defendant's counterclaim. The court, on its own motion, submitted a form of verdict which the jury apparently used with some additions in the wording. The verdict reads as follows (the jury using the court's form except as to the words in italics):

"We, the jury, find for the plaintiff on plaintiff's petition and at the time of the commencement of this suit plaintiff was entitled to the possession of the combine described in evidence, and further assess value of said combine, on Jan. 19, 1937, at the sum of $600, *on return of defendant's notes and cash*; and we find for defendant on the defendant's counterclaim and assess his damages at the sum of $800."

In his original brief plaintiff attacks the verdict on the ground that it is contradictory and self-destructive. It is claimed therein that it is contradictory in that defendant's instructions on the merits required the jury to find that he "asked plaintiff to take said machine back and return the money paid and notes executed for the purchase price so that defendant could secure another machine," and told the jury that if they so found their verdict should be for defendant on plaintiff's cause of action and on defendant's counterclaim while, on the other hand, plaintiff's instruction on the merits required the jury to find that defendant "did not at any time offer to return to the plaintiff the combine in question without payment of damages" and in such case required them to find for plaintiff for the possession of the combine and plaintiff upon defendant's counterclaim.

Assuming that the verdict in response to these instructions on the merits was contradictory nevertheless plaintiff is in no position to complain.

Plaintiff is in no position to attack the verdict on the grounds mentioned for the reason it is in conformity, insofar as effects the point now made, with the court's instruction on the form of the verdict, to the giving of which instruction the plaintiff did not object or except. By failing to object or except to the giving of this instruction, plaintiff, it must be held, agreed, in effect, that a verdict returned in such a form would be a proper one. [McCormick v. Hill, 104 Mo. App. 544; Stevens Harvesting Co. v. Knights of M. M.,

153 Mo. App. 196; Price v. Hallett, 138 Mo. 561; Ottofy v. Trust Co., 197 Mo. App. 473.]

While the verdict is not in the exact form of the court's instruction the theory of the finding and the instruction are the same. Both the instruction and the verdict were upon the hypothesis that there might be a rescission of the sale and damages allowed to defendant. The difference between the instruction and the verdict is merely that the former provided for partial and the latter entire rescission. Plaintiff, by failing to object or except to the giving of the court's instruction agreed, in effect, that a verdict returned on the inconsistent theory, if any, allowed by the court's instruction, is in no position to complain. The same answer may be given to plaintiff's contention that the verdict is invalid because it allows rescission and, at the same time, damages for breach of contract. We do not find that the cases cited by plaintiff on this point involved a situation where the losing party consented, in effect, that a verdict, inconsistent in its terms, might be returned by the jury.

The judgment is affirmed. All concur.