### RELIANCE COOPERAGE CORP. v. TREAT.

#### No. 14441.

United States Court of Appeals
Eighth Circuit.
April 22, 1952.

978

Edgar Bernhard, Chicago, Ill. (W. F. Reeves, Marshall, Ark., on the brief), for appellant.

J. Smith Henley, Harrison, Ark. (N. J. Henley, Marshall, Ark., and Ben C. Henley, Harrison, Ark., on the brief), for appellee.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

The question for decision is whether the measure of the general damages recoverable by a purchaser for the nonperformance by a seller of an executory contract for the sale of goods is changed or affected by an unaccepted anticipatory repudiation of the contract by the seller.

The parties to this action entered into a contract which, so far as pertinent, reads as follows:

"This Agreement entered into in St. Louis, Missouri this 12th day of July, 1950 by and between Reliance Cooperage Corporation, an Illinois corporation, Party of the First Part, and A. R. Treat, of Marshall, Arkansas, Party of the Second Part; Witnesseth:

"Party of the First Part hereby agrees to purchase and Party of the Second Part hereby agrees to sell a quantity of staves sufficient to aggregate three hundred thousand (300,000) white oak bourbon staves of four and one-half average width, to be produced by, or purchased by, Second Party in Arkansas, Missouri, or Oklahoma, upon the following terms and conditions:

"1. Said staves when shipped shall be not less than 90% bourbon grade. Production shall commence as soon as possible and shall be completed not later than December 31, 1950. First Party agrees that on each final inspection,

not more than 3% of the bourbon staves shall be less than two inches in width and none shall be less than one and one-half inches in width. The price to be paid Second Party by First Party shall be $450.00 per thousand for said bourbon grade staves of four and one-half inch average width, and $40.00 per thousand for oil grade staves of four and one-half inch average width, all f. o. b. freight cars nearest millsite where staves were produced, * * *.

\* \* \* \* \* \*

"4. This agreement shall be governed by the laws of the State of Missouri."

Treat produced and delivered no staves to the Reliance Cooperage Corporation. After the time for performance specified in the contract had expired, the Corporation brought this action against Treat to recover the difference between the contract price of the staves and their market price at the time delivery was due under the contract. This difference was alleged to be $90,000. Treat, the defendant, admitted having entered into the contract, but denied that his nonperformance had caused the plaintiff any damage.

The case was tried to a jury. There was no controversy as to the issue of liability. The sole question in dispute related to damages. The evidence indicated that there had been, between the date of the contract and the date when performance was due, a rise in the market price of staves.

It was admitted that the defendant had on August 12, 1950, sent to Ralph Ettlinger, an officer of the plaintiff, the following letter:

"Marshall, Arkansas
August 12, 1950
"Dear Mr. Ralph Ettlinger:

"I have been trying to get a letter to you for some time but they return to me. I went to Harrison yesterday and got Tom Burns Co. adress trying to get in touch with you. We got a mill at Hallaster, Mo. trying to get started. Have a few Bolts will have a time getting any more. I can't make these staves up there or any where else at the price I haft to pay for Bolts. Every one else are paying $475.00 to $500.00 per M. You see I can't compete with them so if you want those staves I will haft to get around what ever the market is from time to time. You can see your seff that I can get bolts say 70¢ a price when others paying $100.00 per foot. I think the boys can make a lot of staves fast up there if they can pay as much as others are paying if not they will haft to quit. Now you can see where I am at. The other to co. that I am making for with my other 3 mills have raised from $75.00 to $100.00 on the 1000 4½" staves and said they would cancel out as the market raises. So you do just what you want to. I can't make them unless I can buy the timber so let me hear at once. I will have a car before long.

"Yours as ever,
A. R. Treat."

The defendant testified that by telephone in the latter part of August, 1950, he told Ettlinger positively that he (the defendant) would not make any staves under the contract. The defendant also testified that the fair market value of bourbon staves of the type covered by the contract in suit, delivered as the contract provided, was, during August 1950, $400.00 to $450.00 a thousand; that the price of staves began to advance beyond $450.00 a thousand around the last of August or the first of September; and that he thought he got $625.00 a thousand for staves along the last part of December. The plaintiff had objected to the introduction of evidence of the market value of staves in August 1950 as immaterial, but the court admitted the evidence.

On cross-examination, the defendant stated that he knew of no new contracts for staves having been made in August 1950 for less than $525.00 a thousand; that the price of staves might have started to rise a little in July, but that his prices did not rise. When asked to explain why he referred to a rise in prices for staves in his letter of August 12 to Mr. Ettlinger, the defendant said: "I just wanted them to know that I wasn't aimin' to make the staves."

The plaintiff's evidence on the issue of damages was that the telephone conversation with Ettlinger which the defendant testified took place in August, actually occurred toward the end of September, 1950; that the defendant then told Ettlinger that he could not produce the staves at the contract price; and that Ettlinger explained to him that the plaintiff must have delivery of the staves because Ettlinger had made commitments based upon the price stipulated in the contract. The following letter written by the plaintiff to the defendant, which he admitted having received, was introduced in evidence:

"October 6, 1950

"Mr. A. R. Treat
Marshall, Arkansas.
Dear Mr. Treat:

"Last week you advised our Mr. Ralph Ettlinger that you would not deliver staves under our agreement with you dated July 12, 1950, until he came down to Marshall and talked to you about revising the price at which the staves are to be sold to us.

"Under date of August 14, 1950, we wrote you requesting that you reconsider your decision, stated in your letter of August 12, 1950, not to deliver staves under our agreement unless we would pay 'whatever the market is from time to time.' We have not had a formal reply to our letter of August 14, 1950, and the substance of your phone conversation with Mr. Ralph Ettlinger certainly does not permit us to feel confident that you will perform in accordance with your agreement.

"We want to make it very clear to you at this point that we are looking forward to your strict compliance with all of the obligations which you have undertaken in your agreement with us. Over two months have elapsed since we met in St. Louis and worked out the terms of our present contract and to this date you have not advised us that you have produced a single stave for delivery to us under this agreement.

"Information reaching us discloses that you are cutting staves in several different locations. There is, therefore, no reason at all why you cannot deliver to us the staves contracted for in accordance with the terms of our agreement. Please let us hear from you at once on the matter of our agreement or we shall be obliged to take some action to protect our rights in the matter.

"Very truly yours,
"Reliance Cooperage Corp.,
By Adolf Loeb.
"AL :vg"

The evidence as to the market price of staves on December 31, 1950, would have sustained a finding that it was more than the contract price but not in excess of $750.00 a thousand.

At the close of the evidence, the court was requested by the plaintiff to instruct the jury that the plaintiff was entitled to recover the difference between the contract price of the staves the defendant had promised to deliver on or before December 31, 1950, and the market price of similar staves on that date. The court denied the request.

The jury was instructed substantially as follows: That the undisputed facts made a prima facie case of liability against the defendant for damages based upon the difference, if any, between the contract price of $450.00 per thousand staves and the market price as of December 31, 1950. That the defendant contended that he had repudiated the contract prior to that date and that it was the plaintiff's duty to mitigate its damages by purchasing the staves elsewhere. That the burden of proving his contentions was upon the defendant. That the jury was to determine whether the defendant did in fact repudiate his contract prior to December 31, 1950, and, if so, when the repudiation occurred, and whether, after such repudiation, the plaintiff by a reasonable effort could have mitigated its damages by the purchase of the staves on the open market, and whether the damages could have been completely or partially mitigated. That if, on a date prior to December 31, 1950, the defendant definitely and unequivocally advised the plaintiff that he would not deliver any staves under the contract, this would be a breach of the contract by him as of that

date; and that if, after the repudiation, the plaintiff, by a reasonable effort and without undue risk or expense, could have purchased the staves on the open market at a price equal to the contract price, it was the plaintiff's duty to do so, and that the plaintiff would, in that event, be entitled to nominal damages only. That if the plaintiff by a reasonable effort and without undue risk or expense, after the repudiation, if any, by the defendant of the contract prior to December 31, 1950, could have purchased the staves on the open market at a price in excess of the contract price, then it was the plaintiff's duty to do that and mitigate its damages so far as possible, and the plaintiff would then be entitled to damages only for the difference between the market price of the staves at that time and the contract price. That if the jury failed to find that there was a breach of the contract by the defendant prior to December 31, 1950, the plaintiff was entitled to the difference between the market price of the staves on that date and the contract price.

The plaintiff objected to the instructions relating to the duty of the plaintiff to mitigate damages, and to the right of the defendant to repudiate the contract prior to December 31, 1950.

The jury returned a verdict for the plaintiff and assessed its damages at $500.00. The plaintiff appealed from the judgment entered on the verdict.

We gather from the court's instructions that its opinion was that if the defendant had definitely notified the plaintiff prior to December 31, 1950, that he would not produce and deliver staves under the contract, and that if the plaintiff, notwithstanding its insistence that the contract be fulfilled, by a reasonable effort and without undue risk or expense could then have bought similar staves on the market, the measure of its damages would be the difference between what the plaintiff would have had to pay for staves at the time the defendant announced his refusal of performance and the contract price of such staves.

While the applicable law is that of Missouri, there is no reason to believe that the law of that state differs from that which is applied generally to anticipatory breaches of executory sales contracts such as that in suit. In Hawkinson v. Johnston, 8 Cir., 122 F.2d 724, 727, this Court said: "The general doctrine of anticipatory breach by repudiation has, however, been clearly recognized in that state [Missouri]." The leading case on the general subject is, no doubt, that of Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953, which adopted the views which are expressed in Hochster v. De la Tour, 2 El. & Bl. 678, 22 L.J.Q.B. 455, in part as follows: "The man who wrongfully renounces a contract into which he has deliberately entered cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured; and it seems reasonable to allow an option to the injured party, either to sue immediately, or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer." Roehm v. Horst, supra, page 10 of 178 U.S., page 784 of 20 S.Ct., 44 L.Ed. 953; Hawkinson v. Johnston, supra, 8 Cir., page 729 of 122 F.2d.

A concise statement of the general rule as applied to a sales contract is found in Claes and Lehenbeuter Mfg. Co. v. McCord, 65 Mo.App. 507, 509, in which the court said:

" * * * The law is that, where the promisor before the time of performance expressly renounces his contract, the promisee is thereby entitled either to treat the contract as broken and sue at once for its breach without averring an offer or readiness to perform, or he may wait until the time of performance has expired, and then sue for the consequences of nonperformance."

That this is still the law in Missouri is sufficiently evidenced by the following cases: Minneapolis-Moline Power Implement Co. v. Wright, 233 Mo.App. 409, 420–421, 122 S.W.2d 397, 400–401; The Hiatt Investment Co. v. Buehler, 225 Mo.App. 151, 163–164, 16 S.W.2d 219, 226; Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 580, 67 A.L.R. 489, 495 (decided by the Supreme Court of Missouri in banc). The case last

cited points out that while as a general rule an action upon an executory contract cannot be maintained until the time for performance has expired, the repudiation of the contract by one of the parties before that time gives to the other party the option to treat the contract as ended and to sue for the damages resulting from the anticipatory breach. In other words, unless the injured party chooses to treat the contract as breached by the anticipatory repudiation, his claim for damages does not accrue until the expiration of the time for performance.

There is no doubt that a party to an executory contract such as that in suit may refuse to accede to an anticipatory repudiation of it and insist upon performance, and, if he does so, the contract remains in existence and is binding on both parties, and no actionable claim for damages arises until the time for performance expires. 17 C.J.S., Contracts, § 472; 12 Am.Jur., Contracts, §§ 392, 397; Peterson Steels, Inc. v. Seidmon, 7 Cir., 188 F.2d 193, 195; Kentucky Natural Gas Corp. v. Indiana Gas & Chemical Corp., 7 Cir., 129 F.2d 17, 19, 143 A.L.R. 484, 487; Hettrick Mfg. Co. v. Waxahachie Cotton Mills, 6 Cir., 1 F.2d 913, 919; Roehm v. Horst, 178 U.S. 1, 11, 20 S.Ct. 780, 44 L.Ed. 953.

It is our opinion that, under the undisputed facts in this case, the unaccepted anticipatory renunciation by the defendant of his obligation to produce and deliver staves under the contract did not impair that obligation or affect his liability for damages for the nonperformance of the contract, and that the measure of those damages was no different than it would have been had no notice of renunciation been given by the defendant to the plaintiff. If there had been no anticipatory repudiation of the contract, the measure of damages for nonperformance by the seller would have been the difference between the contract price and the market price of the staves on the date when delivery was due, and that is the measure which should have been applied in assessing damages in this case.

Moreover, the measure of damages would have been the same had the plaintiff accepted the anticipatory repudiation as an actionable breach of the contract. The plaintiff would still have been entitled to recover what it had lost by reason of the defendant's failure to produce and deliver by December 31, 1950, the staves contracted for, namely, the difference between the market price and the contract price of the staves on that date. The Comment in Restatement of the Law of Contracts, § 338, Measure of Damages for Anticipatory Breach, contains the following statement (page 549): "The fact that an anticipatory repudiation is a breach of contract (see § 318) does not cause the repudiated promise to be treated as if it were a promise to render performance at the date of the repudiation. Repudiation does not accelerate the time fixed for performance; nor does it change the damages to be awarded as the equivalent of the promised performance." See, also, Williston on Contracts, Rev.Ed. Vol. 5, § 1397; 46 Am.Jur., Sales, § 688.

It seems safe to say that ordinarily no obligation to mitigate damages arises until there are damages to mitigate. No damages for the nonperformance of the contract in suit accrued before December 31, 1950. Until that time the defendant, notwithstanding his anticipatory repudiation of the contract, was obligated and was at liberty to produce and deliver the staves, and had he done so the plaintiff would have been required to take and to pay for them. There is no justification for ruling that, after the plaintiff was advised that the defendant did not intend to perform, it must hold itself in readiness to accept performance from him and at the same time, at its own risk and expense, buy the staves contracted for upon the open market in the hope of reducing the defendant's liability for damages in case he persisted in his refusal to fulfill his obligations. The plaintiff did nothing to enhance its damages and seeks no special damages.

This same question as to mitigation of damages by a purchaser who insisted upon performance of a contract after a seller's anticipatory repudiation, arose in Continental Grain Co. v. Simpson Feed Co., D.C. E.D.Ark., 102 F.Supp. 354 (tried in the Eastern District of Arkansas). In that case

Judge Lemley, we think, correctly decided that the purchaser was not required to attempt to mitigate his damages by buying the commodity contracted for upon the open market. Judge Lemley said, page 363 of 102 F.Supp.:

"While we have found no Arkansas cases which are directly in point in connection with mitigation of damages, the general rule in the United States is that a buyer who refuses to accept a seller's anticipatory refusal to deliver the commodities contracted for, and who insists upon performance by the latter, is not required to go upon the open market and purchase upon receipt of notice that the seller does not intend to perform. He has a right to treat the notice as inoperative, to wait until the time for performance has passed, and then buy on the open market, charging the seller with the difference between the contract price of the goods and the market price which prevailed at the time that performance should have been forthcoming. 15 Am.Jur. 'Damages,' Section 50; 46 Am.Jur. 'Sales', Sections 678, 681 and 688; Williston On Contracts, Rev.Ed., Sections 1337, 1383, and 1397; Restatement Of The Law of Contracts, Section 338; Callan v. Andrews, 2 Cir., 48 F.2d 118, 120; Joseph Denunzio Fruit Co. v. Crane, D.C.Cal., 79 F.Supp. 117; Missouri Furnace Co. v. Cochran, C.C., Pa., 8 F. 463; Fahey v. Updike Elevator Co., 102 Neb. 249, 166 N.W. 622; Walker-Smith Co. v. Bilao, supra [Tex.Civ.App., 204 S.W. 777].

"There are two reasons for this rule. First, to require the innocent party to make an immediate purchase or sale upon receipt of notice of the other's repudiation would encourage such repudiation on the part of the seller or of the buyer as the market rose or fell. See Fahey v. Updike Elevator Co., supra. Second, the immediate action of the innocent party might not have the effect of mitigating his damages, but might, on the other hand, enhance them. Williston On Contracts, Section 1397, Callan v. Andrews, and Missouri Furnace Co. v. Cochran, both supra."

The doctrine of anticipatory breach by repudiation is intended to aid a party injured as a result of the other party's refusal to perform his contractual obligations, by giving to the injured party an election to accept or to reject the refusal of performance without impairing his rights or increasing his burdens. Any effort to convert the doctrine into one for the benefit of the party who, without legal excuse, has renounced his agreement should be resisted.

The plaintiff is entitled to recover as damages the amount by which on December 31, 1950, the market price of the staves contracted for exceeded their contract price. What the market price of such staves was on that date is a question of fact which has not as yet been determined.

The judgment is reversed and the case is remanded with directions to grant a new trial limited to the issue of the amount of damages.