GOODWIN MANUFACTURING COMPANY, Appellant, v. FRITSCH FOUNDRY & MACHINE COMPANY, Respondent.

St. Louis Court of Appeals, October 31, 1905.

1. **SALES: Rescission: Reasonable Time.** When a chattel is delivered to a buyer he must reject it within a reasonable time thereafter, if it is not in accordance with the contract of sale; otherwise he will be denied the right to rescind.

2. ————: ————: ————. Where a purchaser of a number of machines showed by his conduct that he had no thought of accepting them, but constantly protested to the seller that they were not according to the contract, with requests that they be made to conform to it, and the seller made frequent and ineffectual efforts to make them work well, it was a question for the jury to determine whether an offer to rescind two years after the purchase was within a reasonable time.

3. **PAROL EVIDENCE: Incomplete Contract.** Where a contract for the purchase of certain machines consisted of an exchange of letters between the purchaser and the seller, which letters

Goodwin Mfg. Co. v. Fritsch Foundry Co.

did not purport to be a complete expression of all the terms of the contract, parol evidence was competent to prove terms of the contract not mentioned in the letters.

4. **PRACTICE: Variance: Failure of Proof.** In an action for damages caused to plaintiff by reason of defects in certain machines purchased from the defendant and paid for, where the petition alleged that the machines were, by the agreement between the parties, to be like the old ones in the plaintiff's factory, and the evidence tended to show that the agreement required them to be like the old ones in plaintiff's factory *and* like a cut of machines from another factory, if the cut was like the machines used in the factory, an instruction based upon a contract making requirements to conform to both was not erroneous; but if the cut was unlike those used in the factory, the proof of a contract that they were to conform to the cut was not merely a variance from the petition but a total failure of proof, and in the latter case, an instruction authorizing a recovery based upon a contract containing both requirements was erroneous.

5. ————: **Appellate Practice: Presumption in Favor of Trial Court's Action.** Where the trial court set aside a verdict on the ground that an instruction to the jury was erroneous, such action of the court will be presumed to be right in the absence of an affirmative showing that it was wrong.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Blevins,* Judge.

AFFIRMED AND REMANDED.

*E. S. Robert* and *Douglas W. Robert* for appellant.

No objection having been made to the testimony that the machines were not only to be like the machines in the plaintiff's factory, but also like the cut shown the defendant, and no affidavit of surprise having been filed, it was not error to instruct the jury that they must believe that the machines were to be like the old ones and the cut shown. The instruction was based upon evidence not objected to. R. S. 1899, sec. 655; Hensler v. Stix, 88 S. W. 108 (113 Mo. App. 162); Wall v. Casualty Co., 86 S. W. 491 (111 Mo. App. 504); Litton v. Railway, 85 S. W. 978 (111 Mo. App. 140); Cameron v. Tool Co., 83

S. W. 279 (108 Mo. App. 265) ; Donovan v. Brewing Co., 92 Mo. App. 341; Mooneyham v. Cella, 91 Mo. App. 341; Rumbolz v. Bennett, 86 Mo. App. 177; Friermuth v. Mc-Kee, 86 Mo. App. 64; Hansberger v. Railway, 82 Mo. App. 574; Toppass v. Mfg. Co., 74 Mo. App. 402; Madison v. Railway, 60 Mo. App. 599; Horse Co. v. Bennett, 62 Mo. App. 333; Stewart v. Goodrich, 9 Mo. App. 125; Harrison v. Lakenan, 88 S. W. 53; Fisher v. Realty Co., 159 Mo. 562, 62 S. W. 443; Chouquette v. Railway, 152 Mo. 257, 53 S. W. 897; Howard Co. v. Baker, 119 Mo. l. c., 405, 24 S. W. 200; Bank v. Leyser, 116 Mo. 51, 22 S. W. 504; Mellor v. Railway, 105 Mo. 455, 16 S. W. 849; Ridenhour v. Railway, 102 Mo. 270, 13 S. W. 889; 14 S. W. 760.

*Geo. L. Edwards* and *Edward D'Arcy* for respondent.

(1) It is the duty of the buyer to inspect goods within a reasonable time after their receipt. If, upon such inspection, the goods are found to be defective, the buyer has two courses open: first, he may accept and use the goods and sue the vendor on his warranty, if any, for damages caused by the defect; second, he may reject the goods, and return or offer to return them. In this case, he may sue for the recovery of the purchase price, if paid, or, if not paid, may successfully resist its payment. In either event, the buyer must notify the vendor of his decision, within a reasonable time after the receipt of the goods. Benjamin on Sales, 1888 (Bennett's Notes), secs. 666, 703; Tower v. Pauly, 51 Mo. App. 75; Viertel v. Smith, 55 Mo. App. 617; Branson v. Turner, 77 Mo. 489; World Pub. Co. v. Hull, 81 Mo. App. 277; Johnson v. Whitman Agricultural Co., 20 Mo. App. 100; Cahn v. Reid, 18 Mo. App. 115; Robbins v. Phillips, 68 Mo. 100; Steam Heating Co. v. Gas Fixture Co., 60 Mo. App. 149; Overton v. Brown, 63 Mo. App. 49; Johnson-Brinkman Co. v. Railway, 52 Mo. App. 408; Taylor v. Short, 107 Mo. 385, 17 S. W. 970; Olmstead v. Smith, 87

Mo. 602; Carroll v. Paul, 16 Mo. 239. (2) Even if the instruction was a misdirection it would not be error unless the jury was misled to the injury of the defendant. Davis v. Brown, 67 Mo. 313; Hook v. Craghead, 35 Mo. 380. The meaning of an instruction must be gathered from it as a whole and not by critically separating it or dissecting it. Feary v. O'Neill, 149 Mo. 475, 50 S. W. 918; Allberger v. White, 117 Mo. 362, 23 S. W. 92; 2 Thompson on Trials, p. 1757; Nave v. Flack, 90 Ind. 205-211; Water & Light Co. v. City of Lamar, 140 Mo. l. c. 157, 39 S. W. 768; Graff v. Foster, 67 Mo. 520; Water Co. v. Aurora, 129 Mo. 540, 31 S. W. 946; Mechem on Sales (1901), sec. 1392. (3) There cannot be a declaration on one cause of action and a recovery on another. Reed v. Bott, 100 Mo. 62, 12 S. W. 347; 14 S. W. 1089; Phleger v. Weltner, 21 Mo. App. 580; Gray v. Race, 51 Mo. App. 553; Feurth v. Anderson, 87 Mo. 354; Faulkner v. Faulkner, 73 Mo. 327; Newham v. Kenton, 79 Mo. 382; Waldhier v. Railway, 71 Mo. 514; Bank v. Armstrong, 62 Mo. 59; Whipple v. Peter Cooper B. & L. Assn., 55 Mo. App. 554; Huston v. Tyler, 140 Mo. 252, 36 S. W. 654; 41 S. W. 795; Cole v. Armour, 154 Mo. 333, 55 S. W. 476; Bank of Fitchburg v. Westlake, 21 Mo. App. 565; Price v. Railway, 72 Mo. 414; Matson v. Frazer, 48 Mo. App. 302. (4) An entire failure of proof occurs where "there is a total failure to sustain an allegation stating a distinct and independent ground of recovery, as where the fact proved negatives the one alleged." When this happens, the plaintiff's case must fail. R. S. 1899, sec. 798; Hensler v. Stix, 113 Mo. App. 162, 88 S. W. 112. "As the trial issues must be within the paper issues, instructions must be framed with regard to the paper issues made." Link v. Vaughn, 17 Mo. 585; Ensworth v. Barton, 60 Mo. 511; Hubbard v. Railroad, 63 Mo. 68; Bank v. Armstrong, 62 Mo. 70; Clements v. Yeates, 69 Mo. 623; Stix v. Mathews, 63 Mo. 371; Glass v. Gelvin, 80 Mo. 297. (5) Where a buyer fails

115 app—25

to reject defective goods, for a year or more after their receipt, he loses his right to rescind the contract and sue for the purchase price paid, and is confined to an action on his warranty. If he brings an action based on rescission, he misconceives his remedy. Tower v. Pauly, 51 Mo. App. 75; Viertel v. Smith, 55 Mo. App. 617; Whether the buyer has rescinded the sale, and so notified the vendor, within a reasonable time, is ordinarily a question of fact for the jury, but "the time may be so long, and the delay in offering to rescind may be so entirely without excuse or fair explanation, that the courts will, as matter of law, declare the same unreasonable." World Publishing Co. v. Hull, 81 Mo. App. 277.

GOODE, J.—The parties to this action are both incorporated companies, doing business in the city of St. Louis. The plaintiff manufactures mining candles and the defendant machinery of different kinds. In May, 1899, the plaintiff gave the defendant an order to manufacture ten candle machines, to be used in making candles. Each of the machines was to mold 360 candles at a time. The plaintiff had been using machines which were manufactured by a concern in Cincinnati, Ohio. They contained molds for 96 candles, or about one-fourth of the capacity of the machines ordered of the defendant. It appears the Cincinnati machine was patented, but the defendant said it could manufacture machines like it by making some slight alterations, which would prevent an infringement of the patents. Eight of the machines were manufactured and delivered to the plaintiff and paid for in due course of business. The cost of the eight was $2,280, or $285 each. The testimony for the plaintiff is that these machines, instead of being according to contract, were so defective in construction as to be useless and worthless. The petition says defendant agreed to furnish machines which would manufacture candles weighing six to the pound, and that this would require a longer mold than the machines plaintiff was using; that

the new machines were to be so constructed that the candles molded in them could be cooled by water; whereas the candles in the old machines were cooled by air. The alleged faults of the machines furnished by the defendant are these: First, the molds at the bottom were so constructed, in respect of having larger holes in them than the old machines had, and lacking flanges such as were on the old ones, that water seeped in and wet the candlewicks; second, the molds broke in expanding and contracting, owing to the necessity, entailed by their faulty construction, of screwing them very tight to keep the water out; third, the molds were of shorter diameter than those in the old machines so that the candles did not run six to the pound as it was agreed they should; fourth, the sides of the pans on the tops of the molds were one-quarter of an inch lower than the sides of the pans on the machines in use by the plaintiff and, in consequence, permitted the ends of the candles to cool so rapidly that the ends were not smooth but had airholes in them; fifth, the racks above the machines would not hold the candles in proper position for cooling. The testimony for the plaintiff conduced to prove the machines furnished by the defendant had each of those faults and because of them were worthless, as marketable candles could not be molded in them. The eight machines were delivered to the plaintiff at different times from August 31 to November 27, 1899. A few months afterwards the molds were connected with the motor machinery in the factory and an unsuccessful attempt made to manufacture candles with them. Defendant's officers were notified of their defects and, from time to time, employees of the defendant worked on the molds in an effort to remedy their faults. The evidence for the plaintiff goes to show that Arthur Fritsch, president of the defendant company, repeatedly promised to put the molds in working order. Plaintiff's officers had purchased other machinery of defendant which at first did not operate satisfactorily, but had been made to by de-

fendant, and therefore, reliance was placed on defendant's promises in this instance. There was an account current between the parties for different pieces of machinery plaintiff had purchased, on which account payments were made from time to time, and the effect of these payments was to cover the price of the eight machines in controversy. Now, one defense to the action is that the plaintiff accepted, paid for and used the machines, instead of offering to return them and demanding repayment of their price within a reasonable time— in other words, that plaintiff did not seek to rescind the contract promptly after obtaining knowledge of the faults of the machines. The demand for the return of the money and the tender of the machines to the defendant occurred November 13, 1901, and was refused by the defendant on the following day on the ground that it had fully complied with its contract.

The instructions requested by the defendant on this phase of the case, except a peremptory one for a verdict in its favor, were given, and we think were fair. The jury were advised that plaintiff by receiving, using and paying for the machines, created a presumption that it accepted them and thereby precluded itself from recovering in the present action. We understand that charge to mean there was, from the facts stated, a rebuttable legal presumption of acceptance, which threw the burden of proof on the plaintiff to establish that it had not in fact accepted the machines. This is apparent from the concluding paragraph of the charge, wherein the jury were informed that the burden of proving non-acceptance was on the plaintiff. The jury were further told that it was plaintiff's duty to examine the machines within a reasonable time after they were delivered to ascertain if they conformed to the contract, and if found not to conform, to notify the defendant; and unless plaintiff inspected the machines and rejected the same for non-compliance with the contract within a reasonable time, considering the nature and character of the

machines, the defects complained of, and the facilities and opportunities plaintiff had for making an inspection, it was not entitled to recover. When a chattel is delivered to a buyer, he must reject it within a reasonable time thereafter, if it is not in accordance with the contract of sale, or he will be denied the right to rescind. [World Pub. Co. v. Hill, 81 Mo. App. 277.] According to the testimony in behalf of the plaintiff, there never was a thought of accepting the machines in controversy as in compliance with the contract. Constant protests were addressed to the defendant concerning the imperfections, with requests that the molds be made to conform to the agreement and put in good working order. These requests were received in good part by defendant, efforts made to adjust the machines and promises given to make them work well. We overrule the respondent's contention that the jury should have been directed to return a verdict in its favor on the ground that the evidence conclusively proved plaintiff accepted the machines as they were.

Respondent raised the point that the court erred in receiving parol testimony to supplement the written contract between the parties regarding the machines. The contract, so far as it was written, was in two letters. In one, dated May 3, 1899, the defendant stated that it confirmed its verbal quotations of $285 for the machines intended to mold 360 candles at one setting, and $250 for the smaller machines of the same capacity; workmanship and material to be first-class in every respect. The other letter was addressed to the defendant by the plaintiff May 5, 1899, and in it plaintiff agreed to what was said in defendant's letter of May 3d, with the qualification that the price of the larger machines was to be $265, if defendant could make them for that price. There was no answer to this letter, although one was requested. The letters do not purport to be a complete expression of the terms of the contract. They con-

tain no specifications regarding what kind of molds were meant, but simply give the prices of the two sizes; and are indefinite even as to the price of the larger machines. Oral testimony was competent to prove terms not mentioned and consistent with those which were mentioned. [Minnesota Co. v. Hardware Co., 81 Mo. App. 255; State v. Cunningham, 154 Mo. 161, 55, S. W. 282.]

The testimony for the defendant corroborated that for the plaintiff in regard to some of the alleged imperfections of the machines, but tended to exonerate defendant from blame for them. It was admitted the sides of the pans on them were about a quarter of an inch lower than the pans on the old molds in use in plaintiff's factory, and that this shallowness of the pans caused the ends of the candles to cool so rapidly there were airholes in the ends, in consequence of which about an inch had to be cut off the candles before they were marketable. It was in testimony that Tower, plaintiff's president, was informed that the pans on the new machines would be shallower than those on the old ones, and Tower said he preferred them shallower. One of the defendant's workmen testified the racks on the machines intended to hold the candles in place for cooling sagged, and thereby lowered the candles out of position. The sagging was due to the length of the machines, he said. Each mold was to manufacture 360 candles at a setting and had to be five feet long. This was too much of a span for the racks to remain straight. The witness said he offered to brace the racks, but the brace would intercept the sweep of the knife used in cutting the candles and plaintiff's foreman would not permit this. By agreement with the foreman the rack was finally braced in the center; and we gather from the testimony that it was thought this would obviate the sagging. Hayman (defendant's workman) further testified that because of the greater size of the new machines, the flanges were necessarily smaller than

those on the old ones. There was testimony to prove defendant offered to or did fix the molds by the use of cement, so water would not seep into the wicks. Without giving further particulars, it may be stated that the general effect of the testimony for the defendant was that in so far as the machines, as first delivered, failed to comply with the contract, they were adjusted by the defendant until satisfactory to the plaintiff; and, further, that the plaintiff's officers approved of the plans for the new machines. watched their construction and dictated how they should be made.

A verdict for plaintiff was set aside on the ground that the first instruction granted at plaintiff's request was erroneous in two respects: first, in requiring the jury to find defendant agreed to construct candle machines to be like, not only the machines in use in plaintiff's factory but a cut or picture of a machine manufactured by Homan & Company of Cincinnati, which cut had been shown to defendant's manager Fritsch by Tower in negotiating the contract; that this was error because the petition alleged the machines were to be built like those in use in plaintiff's factory, without saying anything about the cut; second, that the instruction likewise authorized a recovery in case the machines in controversy had certain defects, or differences from those in use in plaintiff's factory, and defendant promised to remedy the faults; that recovery on this ground was allowed without regard to the question of whether the machines were made according to the contract between the parties or not. It is true that the instruction in question authorized a verdict for plaintiff on a finding by the jury that the defendant had agreed to manufacture machines like the cut shown defendant by plaintiff, and like the candle machines then in use in plaintiff's factory. It is true, too, that the petition did not mention the cut of the machines manufactured by Homan & Company, but alleged the new machines were to be of the same construction as those in use by plaintiff, except that the molds were

to be longer, there were to be 360 molds to each machine and so arranged that the candles, when molded, could be cooled by water instead of air. Therefore, the instruction went beyond the averment of the petition regarding the kind of machines defendant agreed to make, and to that extent broadened the issues. The position of the plaintiff is that evidence was put in which tended to show the agreement between Tower and Fritsch was that the new machines should be like the old ones in plaintiff's factory and like the one shown in the cut as well; and that this evidence having been received without objection, it was proper for the court to instruct the jury regarding it, as it was, at most, a variance which defendant had failed to call attention to or take advantage of in the manner required by the statutes. For the defendant it is contended that the evidence was no variance, but a failure to prove, in its entire scope and meaning, the allegation of the petition as to the kind of molds defendant was to make; that the petition stated an agreement to manufacture machines like those in use; whereas the testimony for the plaintiff showed an agreement to manufacture machines like those in use and like another machine shown by a picture. The facts about the agreement are that Tower had Fritsch visit plaintiff's factory and look at the machines in use there to see whether defendant could manufacture a candle mold which would make 360 candles, instead of 96, at one setting. During the conversation Tower said to Fritsch that Homan & Company of Cincinnati manufactured candle molds and showed him a cut of molds of that capacity which said firm was making. Tower told Fritsch that because plaintiff would make candles of paraffin, a light substance, it desired the molds of the new machines to be longer (deeper) than the old molds, so the increased length of the candles would make them run six to the pound; and, further, that it wanted the machines so arranged that the candles could be cooled by water; otherwise to be like those in use. Fritsch had

a sketch made of the old machines and from that sketch and from the cut of Homan & Company's machine, a plan for the new machines was drawn. Tower testified that Fritsch was to get his ideas from the cut and from the machines in the factory. He further testified that he never saw the drawing of the new machine, but Fritsch was to make it according to the cut of the Homan machine "in conjunction with getting his measurements from our candle machines we had in service." Arthur Fritsch swore: "I sent a draughtsman out to the Goodwin Manufacturing Company to look at the machines they had and Mr. Tower gave me a catalogue of the Homan people of Cincinnati; and with that we made the drawings and Mr. Tower saw the drawings that we made, and after we had the drawings completed, we started on the pattern and built the machine." Fritsch further swore that he had to make some changes in the molds as compared with the old machines on account of the larger capacity of the new ones.

It is apparent from the testimony for the defendant that the new candle molds, because of their size, had to be different from the old ones in other respects than those agreed on between Fritsch and Tower in the first place; at least, that is the theory of the defense and the testimony tends to establish it. For instance, it was said that the flanges at the bottom of the molds had to be narrower than the old flanges; and this was one of the causes why water seeped in and wet the candle wicks. It is also in proof that the racks of the new machines sagged on account of the long span of five feet over which they stretched; whereas the racks of the old molds, which were shorter, remained level. Now, there is no evidence whatever in the record from which we can determine whether the cut of the Homan machine was conformed to in making the new ones; or in what respect, if any, the machine shown in the Homan cut differed from the old machine in plaintiff's factory. If it was unlike those in use in the factory, it is obvious

that the defendant could not make machines like it and also like those in use. If, on the other hand, the Homan cut showed a machine like those in use in plaintiff's factory, except as to capacity, defendant could have manufactured machines like both; and in that contingency the insertion in the first instruction of a requirement that the jury should find defendant was required to manufacture machines like those in use in the factory and like the one shown in the Homan cut, was harmless. In effect, it required a finding that a contract had been made which expressed in two forms of identical meaning, the kind of molds defendant was to manufacture. We are unable to gather from the evidence what the facts were in this regard. The matter is very obscure on the record; which contains neither the Homan cut nor any testimony as to how much it resembled, or how it differed from, plaintiff's old machines. The court held the instruction was erroneous, and all we can do is to sustain the court's action; which is presumed to be right in the absence of an affirmative showing that is was wrong. The whole matter stands on whether the Homan cut showed a machine substantially like those in plaintiff's factory. If it did, there was no error in requiring the jury to find defendant was required to manufacture a machine like both the cut and the old machines. If the Homan cut showed a machine radically different from those in plaintiff's factory, the court erred in requiring the jury to find the defendant agreed to furnish a machine like the one in the cut and like the old machines; for in addition to this being an agreement impossible to perform as made, the evidence, in so far as it tended to prove the machine in the cut was to be imitated, not only failed to prove the averment of the petition that the new machines were to be like the old ones, but disproved it by showing they were to be like another and dissimilar machine. Our impression, gathered from the evidence, is that the cut of the Homan machine was to be used by the defendant

merely to get an idea of the pattern and style of the machine to be manufactured, but was to manufacture machines structurally like those in plaintiff's factory, save as to three features agreed to be changed.

The order for new trial is affirmed and the cause remanded. All concur.