TRANSPORT MANUFACTURING & EQUIPMENT COMPANY, a Corporation, and Riss & Company, Inc., a Corporation, Appellants,

v.

FRUEHAUF TRAILER COMPANY, a Corporation, Appellee.

FRUEHAUF TRAILER COMPANY, a Corporation, Appellant,

v.

TRANSPORT MANUFACTURING & EQUIPMENT COMPANY, a Corporation and Riss & Company, Inc., a Corporation, Appellees.

Nos. 16710, 16711.

United States Court of Appeals
Eighth Circuit.

Oct. 18, 1961.

Rehearing Denied Nov. 15, 1961.

Richard S. Righter and William M. Stapleton, Kansas City, Mo., for Transport Mfg. and Equipment Co.; Jack W. R. Headley, Kansas City, Mo., on the brief.

Michael Bogutski and Lawrence R. Brown, Kansas City, Mo., for Fruehauf Trailer Co.; Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., and Ernest L. Rushmer, Detroit, Mich., on the brief.

Before SANBORN, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendants Transport Manufacturing & Equipment Company (Transport) and Riss & Company, Inc., (Riss) have appealed from certain portions of the final judgment entered against them. Plaintiff Fruehauf Trailer Company (Fruehauf) has filed a cross-appeal as to portions of the final judgment.

Jurisdiction, based upon diversity of citizenship and the requisite amount, is established.

The parties are in agreement that their rights and liabilities are governed by Missouri law.

The stock of both defendant corporations is owned wholly by the Riss family. By reason of the pleadings, pre-trial orders and the manner in which the case was tried, the trial court treated the two defendant corporations as having common rights and liabilities. Defendant Transport questioned the validity of such determination in its motion for new trial but such issue is not raised in these appeals and will be given no consideration.[1]

This litigation is rather complicated. The pleadings are lengthy. A substantial dispute exists upon many fact issues. The printed record consists of 1,259 pages, all of which we have carefully considered. To set out the pleadings and the evidence in any detail would serve little purpose and unduly prolong

---

1. R. Riss, Sr., was the founder of both corporations and is the dominating figure in each corporation. Transport owns the terminals and most of the moving equipment while Riss operates the equipment and holds the operating certificates.

this opinion. This case turns largely on fact issues. The parties are completely familiar with the facts. The trial court's memorandum opinion and statements made during the course of the trial reflect that the court has given full and careful consideration to all of the evidence.

Fruehauf is the world's largest manufacturer of truck trailers. Defendants operate large fleets of trailers and are among the largest operators in the country. This litigation arises out of trailer sales made by Fruehauf to defendants as follows:

1. A January 1957 contract for 250 reefers (refrigerated trailers), and 400 vans.

2. A July 1957 contract for 200 reefers.

3. A 1954 contract for 800 reefers and 400 dry vans.

Plaintiff's complaint contains six counts. Count I is a replevin count for possession of the 250 reefers covered by the January 1957 contract. Plaintiff holds a chattel mortgage given by defendants on the 250 reefers and certain other trailers as security for the purchase price. Plaintiff alleges defendants are in default upon their payments and that plaintiff is entitled to possession of the mortgaged property.

Count II seeks a deficiency judgment against the defendants for the difference between the unpaid balance of the purchase price of the reefers and the net amount received by plaintiff for the mortgaged equipment, plus interest and attorneys' fees.

Counts III and IV relate to issues as to which no appeal has been taken by either party.

Count V seeks damages for breach of the January 1957 contract for purchase of 400 vans, plaintiff claiming there was an anticipatory breach of this contract by defendants.

Count VI is for damages for alleged anticipatory breach of the July 1957 contract for the purchase of 200 reefers.

Defendants filed answers denying plaintiff was entitled to any relief and also filed a counterclaim in five counts. In Count I of the counterclaim defendants ask for rescission and cancellation of all security defendants had given plaintiff in connection with the 1957 purchases, being the security involved in Counts I and II of the complaint, and also ask for cancellation of the January 16, 1957 contract for the purchase of 250 reefers and 400 vans, and the July 16, 1957 contract for purchase of 250 reefers. Defendants alleged that they were entitled to such relief because of fraud and breach of warranty on the part of the plaintiff.

In Count II of the counterclaim, defendants alternately prayed for damages for breach of contract and breach of warranty for defects in the 250 reefers delivered in 1957.

Count III alternately sought damages for the same fraud alleged in Count I of the counterclaim.

Count IV is for the breach of implied warranty of fitness of reefers purchased in 1954.

Count V is for the value of tires defendants turned over to plaintiff for use on trailers which were not delivered.

The final judgment of the trial court upon the issues presented by the pleadings, so far as pertinent to these appeals, is thus summarized:

1. On Count I, the replevin count, the court found for plaintiff and found against defendants on Count I of their counterclaim, the rescission count. The court determined plaintiff was not guilty of fraud and that there was no breach of warranty sufficiently material to justify rescission, and that in any event the right to rescind for breach of warranty if it ever existed had been abandoned and waived, since rescission was not attempted within a reasonable time. The defendants have appealed from this portion of the judgment.

2. On Count II of the complaint, the final judgment provided for a deficiency judgment in the amount of $691,497.87

plus interest and $35,000 attorneys' fees. Both parties have appealed, defendants claiming the deficiency is excessive and plaintiff claiming it is inadequate.

(The portion of the judgment relating to Counts III and IV is not involved in these appeals.)

3. On Count V of the complaint, the court awarded plaintiff damages of $110,400 for defendants' breach of the January 1957 contract for the purchase of 400 vans. Defendants appeal from this portion of the judgment on the basis that no anticipatory breach has been proved, while plaintiff in its appeal contends the damages awarded are inadequate.

4. On Count VI of the complaint for breach of the July 1957 contract for 200 reefers, the court found for the defendants and plaintiff appeals.

Items 5 to 8 hereinafter relate to the judgment entered with respect to defendants' counterclaim. The relief claimed by way of rescission in Count I of the counterclaim was adjudicated in connection with the judgment entered on Count I of the complaint.

5. On Count II of the counterclaim, the court awarded defendants $50,000 damages for breach of contract and warranty as to 250 reefers purchased in January 1957. Plaintiff appeals on the basis that defendants are not entitled to any damages. Defendants appeal upon the ground that damages awarded are inadequate.

6. On Count III of the counterclaim, the court denied defendants relief for damages for fraud. This point is not briefed on this appeal.

7. On Count IV of the counterclaim, the court awarded defendants $50,000 for breach of implied warranty on the 1954 vans. Plaintiff appeals from this portion of the judgment, asserting defendants are entitled to no relief on this ground.

8. Count V of the counterclaim, the court allowed defendants $62,244, the award being based on the value of $31.50 on each of the tires delivered by defend-

ants to plaintiff. Both sides have appealed, plaintiff claiming the court overvalued the tires and defendants claiming that they were undervalued.

Before considering the specific issues raised by these appeals, we will restate several principles governing all of such issues. The parties agree that Missouri law governs. We have frequently stated that on doubtful questions of local law in diversity cases, the question for review is whether the trial court reached a permissible conclusion upon the applicable state law and that "we go no further than to determine that the trial court reached a permissible conclusion upon the basis of the law of its state." Kern v. Prudential Ins. Co., 8 Cir., 293 F.2d 251, 255. In Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734, we state:

" 'We have repeatedly said that, in reviewing doubtful questions of local law, we would not adopt views contrary to those of the trial judge unless convinced of error, and that all that this Court reasonably can be expected to do in such cases is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the local law. Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Buder v. Becker, 8 Cir., 185 F.2d 311, 315, and cases cited. If a federal district judge has reached a permissible conclusion upon a question of local law, we will not reverse, even though we may think the law should be otherwise.' "

We have also steadfastly adhered to the view that responsibility for deciding doubtful fact issues rests with the trial court. This court does not retry doubtful fact issues and substitute its judgment for that of the trial court. The trial court's findings can be set aside only if it is clearly demonstrated that they are without adequate evidentiary support or induced by an erroneous view of the law. The trial court's fact findings which are supported by substantial evidence cannot be upset. Gulf, Mobile & Ohio R. R. v. Thornton, 8 Cir., 294

F.2d 104 (decided August 30, 1961); Tyson v. State of Iowa, 8 Cir., 283 F.2d 802, 809; Coca Cola Bottling Co. v. Hubbard, 8 Cir., 203 F.2d 859; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136.

We now reach the consideration of the errors asserted by the parties to the final judgment in the order in which they are hereinabove listed.

1. Defendants' only real defense to plaintiff's replevin count is the alleged right to rescind the January 1957 contract and to cancellation of the security they gave pursuant thereto. The execution and delivery of the chattel mortgage is not in dispute and it is clearly established that the defendants have not made the payments required by the mortgage and are in default. Defendants' claim to the right of rescission is based on Count I of their counterclaim. Defendants base their right to rescission of the contract for the purchase of the reefers and the security given pursuant thereto upon fraud and breach of warranty.

Defendants claimed material false representations as to the quality of the reefers, particularly with respect to tandems, landing gear, and refrigeration. The court disposed of such claims, stating:

"I don't think that there were any false representations in the quality of the reefer to be constructed under the agreement between the parties. The things that made the reefer deficient as delivered were matters that occurred as a consequence of construction and assembly in the plant of the Fruehauf Company, and were not as a consequence of positive misrepresentations made, but that such defects were within the contemplation of the parties, and that they would be made good and were a part of their contract for the construction of the reefers."

Defendants' main claim of fraud is the contention that plaintiff represented that they were getting the reefers at factory cost and that after the suit was commenced defendants discovered that the price of the reefers was loaded with a charge for an overallowance upon reefers traded in. The negotiations leading to the purchase of the 1957 reefers were in progress for nearly a year. Before the price of the specially constructed reefers Riss was purchasing was fixed, the price to be allowed Riss on the 1954 reefers he was selling to the plaintiff was set at 75% of the price Riss paid for each unit in 1954. There is substantial evidence that such value is considerably more than the fair market value of the trailers at the time that they were sold back to the plaintiff, although there is evidence to the contrary. There is likewise evidence that Riss was told during the negotiations that he could buy the reefers for $1,000 less if it were not for the trade-ins. The purchase negotiations were in charge of R. Riss, Sr. He had been purchasing trailers from the plaintiff and others for over thirty years and was a sharp trader and was an expert on trailer values. Shortly before the 1957 purchases here involved, Riss had purchased a substantial number of reefers from Trailmobile. The trial court observed that the parties were dealing, as Mr. Riss had said, as "horse traders". The court, in its discussion of the fraud issue, states:

"That only leaves the question of fraud in respect to the price as ground for rescission in this case. As to that matter I do not think that there is evidence in this case sufficient to show that Mr. Riss has sustained the burden of proof that he had in his dealings with Roy Fruehauf or anyone with the Fruehauf Company, that he was warranted a reefer that would not cost more than 12 percent profit to the manufacturer, and that he wholly relied upon that fact in making this transaction. As I said before, he relied on a price that was negotiated and agreed in a specific amount as a consequence of

his sale of his equipment to Frue-hauf.

"All of his conduct establishes that to be true. Without going back over the matter, the particular facts, because you are more acquainted with them and have them better in mind than I do, I am just giving you more or less my impressions here. I cannot see in this case with reference to the question of price any fraud as is ordinarily incident to cases where rescission has been granted or allowed, where price is a factor, and price has been misrepresented. There are too many other factors in this case to show that Mr. Riss did not rely wholly upon the price he was paying. He was satisfied with that price, and never had a thought with reference to it until such time as the amended counterclaim was filed in this case, and after discovery was had by the parties.

"I cannot from the facts established regarding the negotiations between Riss and Fruehauf convince myself that the factors regarding the price agreed upon was any different before than after discovery in this case. If before discovery Mr. Riss was relying upon manufacturer's cost plus 12 percent profit to be the price for the new reefers—seemingly that was engendered by custom that he thought existed in respect to the establishment of price by Fruehauf. The evidence in that respect is that he merely assumed a lot of matters existed, which were not actually represented in his negotiations. I think that he is telling the truth when he testified to them, but he is assuming that those facts occurred at the time of this particular transaction in 1957, but it does not appear that they were actual representations made during the negotiations leading up to the 1957 agreement."

The court found that no fiduciary relationship existed between the parties; that Mr. Riss was an experienced trailer purchaser; that the price of the new equipment plaintiff sold and the purchase of the trade-in equipment were related transactions and that one would not have been made without the other; and that no fraud was practiced upon defendants by the plaintiff. Such findings are supported by substantial evidence.

■ This leaves the question of whether rescission lies for breach of warranty. The court denied rescission on two grounds:

1. That the defects in the equipment delivered were not of such a substantial nature as would justify rescission.

2. That the defects in the equipment claimed were discovered or discoverable shortly after the delivery of the equipment and that rescission was not attempted within a reasonable time.

If the court was right upon either of the foregoing grounds, its denial of rescission will be affirmed. The court found that there was a breach of warranty. Whether the court was right in holding that the breach of warranty was not sufficiently substantial to warrant rescission presents a close question which we find it unnecessary to decide, since we are convinced that the court's determination that any right of rescission which might have existed was lost or abandoned because the right was not exercised within a reasonable time is supported by substantial evidence and the applicable Missouri law.

■ There is no dispute between the parties upon the legal principle that a right to rescind may be lost by a failure to proceed with reasonable diligence after the right to rescind arises. King v. Guy, Mo.App., 297 S.W.2d 617, 621; Stone v. Kies, Mo.App., 227 S.W.2d 85, 88; 12 Am.Jur., Contracts, § 449, p. 1030; 17 C.J.S. Contracts § 443, p. 926; Restatement, Contracts § 400.

■ Defendants, citing Goodwin Mfg. Co. v. Arthur Fritsch Foundry & Machine Co., 115 Mo.App. 382, 89 S.W. 911; Witte v. Cooke Tractor Co., Mo. App., 261 S.W.2d 651, and other cases, urge that under Missouri law neither the

use by the purchaser nor the delay in rescinding constitutes a waiver of the right to rescind where the continued use of the chattel is induced by the seller. That such is the law in Missouri under appropriate factual setting appears to be established.

In our present case, the trial court found that the defendants had discovered the defects they now complain of shortly after the delivery of the first reefers. Delivery of the reefers commenced with the pilot model in March of 1957 and deliveries continued and were accepted until the delivery of the 250 reefers ordered was completed in November 1957. While the alleged specific defects in the refrigeration were not pinpointed until after the trailers were partially disassembled for inspection after this action was commenced, earlier complaints were made about the refrigerating quality of the reefers. Upon receiving the defendants' complaints, plaintiff investigated the same and made some effort to remedy any defective items. Defendants' complaints appeared to be similar to those made with reference to the 1954 reefers, and apparently were for the purpose of obtaining adjustment and repair of the defects called attention to. There is little if any evidence to support a finding that either of the parties considered the complaints as constituting a notice of intention to rescind. The court found that no notice of intention to rescind was given by defendants until they filed their counterclaim on February 21, 1958. The court's findings as to the timeliness of rescission are:

"Any defects in the equipment, as alleged in Count I of the counterclaim, were discovered or discoverable upon delivery or use of the equipment.

"That Riss continued to use the equipment long after discovery of the alleged defects and failed to promptly rescind the transaction.

"The 250 reefers on which delivery was accepted by Riss were operated a total of 4,675,818 revenue producing miles during the period they were in the Riss possession. By revenue producing miles is meant the total distance from the point of origin to point of destination.

"Riss never tendered back the 250 reefers until the original answer and counterclaim was filed in this proceeding, and the tender then made was conditional and not absolute.

"Riss did not attempt rescission of the 1957 transaction in a reasonable time."

There is much conflicting evidence in the record. A careful examination of the evidence persuades us that there is substantial support for the court's findings just set out. Upon the basis of such findings, the court was warranted in determining that the right to rescind the January 1957 contract had been abandoned and waived because the rescission was not attempted within a reasonable time.

2. The final amount of the deficiency judgment awarded the plaintiff after a reduction made by the court from the original award is $691,497.87, plus interest, and attorneys' fees. Such judgment is based upon the following:

"Deficiency Computation

| "Contract balance as of May 1, 1958... | | | $2,662,980.68 |
|---|---|---|---|
| Gross proceeds of sales...... | | $2,182,237.87 | |
| Deduct: Repairs, additions, etc..... | $113,228.05 | | |
| Freight ...... | 36,362.40 | | |
| Commissions.. | 44,372.01 | | |
| Other expenses ........... | 16,792.58 | | |
| | | 210,755.04 | |
| Net recovery... | | | 1,971,482.04 |
| Deficiency ..... | | | $ 691,497.87"[2] |

The parties do not challenge the court's determination that the May 11, 1958, balance due on the chattel mortgage is

2. There is a discrepancy in figures amounting to a few cents but no one is complaining as to this.

$2,662,980.68. The only controversy with reference to the gross proceeds of sale figure is that raised by defendants' claim that plaintiff made an excessive deduction of $38,365 for Thermo-King units sold with the reefers and that the gross proceeds of sale should be credited in that amount. The Thermo-King units for each of the 250 reefers were purchased by the defendants directly from the Thermo-King Corporation and were at the time the reefers were repossessed owned by defendants subject to mortgage liability to Thermo-King in the amount of $2,078 upon each unit. As a condition to the surrender by defendants of the reefers which had not been previously repossessed, plaintiff agreed to obtain for defendants written advice from Thermo-King that there would be no claim against defendants upon notes secured by the Thermo-King units. This was accomplished. Plaintiff settled as to each unit the $2,078 indebtedness for $1,925, making an aggregate difference of $38,365 on the 250 units. Plaintiff sold the reefers with the refrigeration units included and deducted $2,078 per unit for the refrigerating equipment. Defendants claim that no more than $1,925 per unit should be deducted from the sale price. The trial court rejected such contention, stating:

> "Defendants' contention that the sum of $38,365 received by plaintiff in excess of the sum paid by plaintiff for Thermo-King units is a transaction as to which plaintiff may not take advantage of its bargain is without merit. Absent a showing that the tie-in thereof with the sale of the tractor was detrimental to the sale, defendants have no right to complain. Plaintiff purchased such Thermo-Kings for its own account. It was not under the facts here required to account to defendants therefor. The inference from the evidence is that the sale of the Thermo-King units in connection with the reefers enhanced the sale price of both."

Defendants have failed to establish that the trial court committed error in such determination.

Defendants concede that the item "other expenses" which consisted of auctioneer's fees and bond premiums aggregating $16,792.52 was properly deducted from the gross sale proceeds but urge that the court erred in allowing the other deductions which consisted of repairs, additions, etc., $113,228.05, freight $36,362.40, and commissions $44,372.01. The major repair item was the addition of new tires and wheels on 114 units. Other repairs included body repairs, washing, painting, and other miscellaneous items. The evidence establishes that practically all of the reefers were salable without repairs in their "as is" condition. The mortgage contains no provision authorizing repairs or for the payment of sales commissions or freight to move the repossessed merchandise to a more advantageous sale location. Defendants strongly urge that under such circumstances the repairs, commission and freight cannot be allowed as deductions. In support, defendants cite Tracy v. Gravois R. R. Co., 13 Mo.App. 295, 297, affirmed 84 Mo. 210; Block Motor Co. v. Melia, Tex.Civ.App., 247 S.W. 666, and other cases which lend support to their view.

The court did not allow the deductions in controversy upon the basis that such expenses were specifically authorized by the mortgage but rested its decision on the basis that the expenses were incurred in fulfillment of plaintiff's obligation to minimize damages, the court stating:

> "On the theory that plaintiff had an obligation to minimize the amount of defendants' damages, and its experience, as well as the results of the re-sales effected, it is clearly established by the evidence that what plaintiff did—defendants' damages were thereby minimized—and defendants cannot in equity, or at law, take advantage of such enhanced value without accepting reasonable expenses fertile to such increase."

The duty of an injured party to use reasonable diligence to minimize damages is recognized generally as well as in Missouri. Pasquel v. Owen, 8 Cir., 186 F.2d 263, 273; Springfield Southwestern Ry. Co. v. Schweitzer, 173 Mo. App. 650, 158 S.W. 1058, 1060; Weller v. Missouri Lumber & Mining Co., 176 Mo.App. 243, 161 S.W. 853, 857; Fisher v. Goebel, 40 Mo. 475.

In the Springfield case, supra, the court states:

" * * * [T]he allowance of the expense of removal was not based upon a right to recover removal charges, but upon a principle of law, well established in this state, that when a man's property is injured or damaged, it is his duty, by all reasonable precaution and expense, to reduce the damage as much as possible." 158 S.W. 1060.

25 C.J.S. Damages § 49, p. 531, provides:

"As a general rule, a party is entitled to all legitimate expenses that he may show to have been incurred by him in an honest endeavor to reduce the damages flowing from or following the wrongful act. Thus, a party may recover expenses legitimately incurred in attempting to prevent loss and injury to property, or expenses incurred in following up property which has been wrongfully taken."

The trial court states:

"Plaintiff's experience in the trailer business has established that the results of a public auction as to value of a trailer are far less than that obtained by direct sales through its branch offices. Their experience was of such a nature as to teach plaintiff not to sell trailers through public auction, if they were to secure the best market price obtainable therefor, but to rehabilitate the same and sell through its branch offices. As a consequence of that experience plaintiff proceeded to make certain needed repairs to some of the 210 reefers remaining unsold and thereafter sell the same through its branch offices in markets most advantageous to receipt of best selling price therefor. The evidence establishes that the repairs made to said reefers and their movement to more advantageous markets were necessary to a resale thereof at the best sale price obtainable. The repairs made to and movement of said reefers to a more favorable market redounded to the benefit of the plaintiff. There is no evidence in this record that said reefers could have been sold, either at public or private sale, where possession thereof was obtained by plaintiff, at a sum equal to that obtained by plaintiff, or in excess of the average, as fixed by public and private sale, as above found."

The court's finding, based upon substantial evidence, is that the "as is" value of the 250 reefers at the time of repossession is $1,561,250; the net credit given defendants by the court for the repossessed reefers, as shown in the deficiency computation, is $1,971,482. In determining allowable deductions, the court eliminated from the repair claim $16,988 considered by the court as profit for repair and labor and parts furnished by plaintiff, and before final judgment, the court also eliminated deduction of $169,-091 for other disposal costs in the form of overhead expenses incurred in selling the 250 reefers. The court found all deductions allowed were reasonably and necessarily incurred by the plaintiff in a proper effort to minimize damages.

Upon the basis of Missouri law applied to the facts in this case, defendants have failed to establish that the court committed error in the allowance of deductions against the gross sale price of the repossessed reefers.

Plaintiff in its cross appeal pertaining to the deficiency judgment contends that the court erred in disallowing its claim for other disposal costs and in determining defendants' credit for tires, wheels and hubs replaced in the amount

of $44,724.76, and in limiting plaintiff to an allowance of $35,000 for reasonable attorneys' fees.

■ As to other disposal costs which were overhead costs, plaintiff's comptroller testified upon cross-examination that he could not say that plaintiff had incurred one penny more in overhead expenses as a result of making the sales of the repossessed reefers and that no determination had been made as to how much of plaintiff's indirect costs were attributable to the reefer sales. The court recognized that as a general proposition overhead costs are to be considered as a cost of doing business but found that evidence of specific overhead costs created by the reefer sales was not sufficiently clear to negate such allowance as constituting a profit to the plaintiff. The court observed that plaintiff, because of its fiduciary position in making the sales, was not entitled to make any profit upon its undertakings directed toward mitigation of damages. Plaintiff has failed to establish that the court's action in disallowing a deduction for other disposal costs under the peculiar circumstances of this case is clearly erroneous.

■ The court also reached a permissible conclusion upon a disputed fact issue in allowing defendants an offset of $44,724.76 against deductible repairs for tires, wheels and hubs removed from certain reefers at the time that they were replaced by new equipment. While we consider the offset liberal, we could not say it is clearly erroneous.

The chattel mortgage provided for allowance of attorneys' fees up to 15% with a proviso that if such amount be in violation of statute or rule of law, the allowance be for as large an amount as permitted by law. Plaintiff's counsel testified that much work had been done and that $55,000 had been paid to apply upon the fees, and that at the time of the trial no final fee had been set and that most of the work was directed to the enforcement of the chattel mortgage and in connection with defenses made thereto. The court initially suggested a fee of $50,000, but upon final consideration, stated:

"On further reflection, such sum should be reduced to $35,000. The greatest thrust in this case by plaintiff has been in respect to defense of plaintiff's security for indebtedness due as covered by chattel mortgages and damages for breach of contract. For counsel's services in replevin, and defense of its security, and amount of deficiency recovered, $35,000 seemingly is a more reasonable allowance for plaintiff's recoverable attorneys fees."

Plaintiff contends that it is entitled to an allowance of attorneys' fees at least in the amount of $50,000. Plaintiff's attorneys have done a tremendous amount of work on this litigation for which reasonable compensation would exceed the amount allowed. However, as the trial court pointed out, issues were presented and tried outside those relating to the enforcement of the chattel mortgage and defenses thereto. Neither party has cited any direct authority bearing upon the standards to be followed in setting attorneys' fees. In 37 Am.Jur., Mortgages § 601, page 82, it is stated:

"Attorneys' fees provided for in a mortgage or deed of trust are within the equitable control of the court, and the court will allow only such sums as to it seem reasonable, regardless of the fact a greater amount is stipulated for. While the amount allowed by the court for counsel fees in foreclosure proceedings cannot exceed the amount fixed by the mortgage, the court has authority to allow a less amount than was stipulated for, when the stipulated amount is shown to be unreasonable. The attorney's fee for collection, provided for in mortgages, has been regarded as in the nature of a penalty, not of liquidated damages, and is therefore subject to the control of the court, which may reduce the amount at its discretion."

■ The amount of the allowance of attorneys' fees rests largely in the dis-

cretion of the trial court. Butzel v. Webster Apartments Co., 6 Cir., 112 F.2d 362. For extensive discussion of the allowance of attorneys' fees in general, see Annotation 143 A.L.R. 672.

■ The trial court was entirely familiar with all phases of this litigation. We cannot say that the trial court abused its discretion in limiting the recoverable attorneys' fees to $35,000.

3. Defendants have appealed from the court's determination that defendants committed an anticipatory breach of the January 1957 contract to purchase 400 vans for a price of $6,396 per unit. The contract called for delivery by September 1, 1957. Riss was in no urgent need of the vans. It is undisputed that the delivery of the vans was postponed by mutual agreement of the parties and that a later delivery date was not agreed upon.

■ Under the rule followed by a majority of the courts, including Missouri, unequivocal renunciation of a contract before the time for performance gives the adverse party the option to treat the contract as broken and to sue immediately for damages for total breach. 12 Am. Jur., Contracts, § 392; Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 580, 67 A.L.R. 489. The critical finding upon this issue reads:

> "The Court is inclined to believe that Mr. Riss, at the January 8, 1958, meeting, unequivocally refused to take delivery of the 400 vans as Mr. Fruehauf says he did. The evidence is that plaintiff was ready, able and willing to make and effect delivery of said vans within a reasonable time had Mr. Riss indicated acceptance of delivery thereof, instead of rejecting delivery. In light of Mr. Riss's unequivocal refusal to accept delivery of the 400 vans plaintiff was not required to tender delivery thereof to defendants before commencing this action. The demand made on Mr. Riss at the January, 1958, meeting did not justify his breach of contract in respect to the 400 vans by unequivocally refusing to take delivery thereof."

The court determined that plaintiff had established loss of profit in the amount of $267 per unit, or a total loss of $110,400. Plaintiff on cross-appeal urges that the court erred in refusing to allow additional damages to the extent of $600 a unit for overallowance on vans defendants traded in and $472 per unit for recovery of indirect overhead expenses. Because of the anticipatory breach, none of the 400 vans were ever manufactured and there is no substantial proof that any expenses were incurred in preparation for the production of the vans.

■ The court found that the overallowance claim was based on the theory that the plaintiff's used car department appraised the trailers traded in at $600 less than the price allowed defendants. The court points out that it is not established what factors plaintiff used in fixing the appraised value and that no attempt was made to relate the appraised value to the market value or the prices received by the plaintiff for the old vans. We find plaintiff's contention that the damages allowed are inadequate to be without merit.

■ 4. The court denied plaintiff's claim for damages for breach by the defendants of the July 16, 1957 contract for the purchase of 200 reefers. The contract provided that the reefers shall be delivered on or before September 15, 1957. No delivery of any of the reefers was made prior to September 18, 1957, and upon said date defendants advised plaintiff that they were cancelling the order for 200 reefers because of nondelivery. Defendants' right to cancel is dependent upon whether time of delivery is of the essence of the contract. The contract did not expressly provide time to be of the essence. The court states:

> "When time for delivery is specifically provided for in a contract, it is at law of the essence of the contract, and unless performance within the specified time is waived or the time is extended by agreement, no recovery can be had on the contract by the party in default."

Such appears to be a permissible view of Missouri law with relation to a salable, manufactured item such as here involved.

In Sabin Robbins Paper Co. v. Cal Hirsch & Sons Merc. Co., Mo.App., 263 S.W. 479, 482, where the contract related to the sale of manufactured backing boards, the court states:

"It is sufficient if it appears that it was the intention of the parties that time should be of the essence of the contract. And the general rule is that in executory contracts of sale, such as this, an express stipulation as to the time of delivery or shipment is regarded as of the essence of the contract. Such a stipulation is treated as being in the nature of a warranty or condition precedent that the goods will be delivered or shipped within the stipulated time." (Supporting citations omitted.)

To like effect, see Lokey v. Rudy-Patrick Seed Co., Mo.App., 285 S.W. 1028, 1032.

The court found that there had been no waiver or extension of time of delivery. The court's action in dismissing Count VI is supported by substantial evidence and is not induced by an erroneous view of the applicable law.

5. Upon Count II of defendants' counterclaim, defendants were given judgment for $50,000 for breach of warranty on the 250 reefers purchased in January 1957. The question of liability and the amount thereof are fact issues. The evidence upon such issues is in sharp conflict and is far too extensive to warrant detailed discussion. We have carefully examined the evidence and the court's findings based thereon and are satisfied that upon both appeals, the appealing party has failed to demonstrate that the judgment entered is without substantial evidentiary support or that it was induced by any erroneous view of the law.

6. Defendants on their appeal have not briefed the issue raised below in Count III of their counterclaim that they are entitled to damages for fraud inducing the January 1957 contract and hence have abandoned such issue. In any event, our affirmance in Division I of the trial court's finding that plaintiff is guilty of no fraud makes clear that defendants are entitled to no relief upon Count III of their counterclaim.

7. Plaintiff's appeal from the $50,000 judgment awarded on Count IV of defendants' counterclaim, based upon breach of warranty on the 1954 vans, is without merit. Plaintiff urges that a specific 90-days warranty was printed on the back of the 1954 sales order (as well as on the 1957 orders) and that such written warranty precludes the assertion of any different, oral warranty. The trial court does not specifically discuss the effect of the 1954 warranty but with respect to the similar 1957 warranty, stated:

"[T]he parties never did intend that the 90-day warranty provision contained in the sales order and finally executed in connection with that agreement should be within the ambit of their agreement."

A party may lose by waiver a right it might have had to stand upon the strict limitations of its warranty. Brandtjen & Kluge v. Hunter, 235 Mo. App. 909, 145 S.W.2d 1009, 1015; Minneapolis-Moline Power Implement Co. v. Wright, 233 Mo.App. 409, 122 S.W.2d 397, 400; Wayne Tank & Pump Co. v. Evans, Mo.App., 15 S.W.2d 895, 897.

There is substantial evidence to the effect that plaintiff had an established policy of not asserting a 90-day limitation upon its warranty against defendants or any other major fleet purchaser, and that plaintiff on many occasions subsequent to the expiration of the 90-days warranty recognized its liability for warranty defects.

The judgment entered on Count IV of the counterclaim is based upon substantial evidence and is not induced by any erroneous view of Missouri law.

8. Count V of the counterclaim involved the issue of the value of certain

**236**

tires which defendants delivered to the plaintiff. Plaintiff's liability for the reasonable market value of such tires is not questioned. Sharply conflicting evidence on the value issue appears in the record. Defendants assert the court's valuation of the tires is too low, while plaintiff claims it is excessive. We are satisfied that the court reached a permissible conclusion in its determination of the amount of damage.

By way of conclusion, we state that a full consideration of all of the errors urged by defendants upon their appeal and by the plaintiff upon its appeal satisfies us that the case was fairly tried and decided by Judge Ridge, and that he has reached a permissible conclusion upon all issues presented by this appeal, and that the final judgment entered in its entirety is supported by substantial evidence, and was not induced by any erroneous view of the applicable law.

The judgment appealed from is affirmed both upon defendants' appeal and upon plaintiff's cross-appeal.